FILED
United States Court of Appeals
Tenth Circuit

June 3, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 06-2364

MONICO ZUNIGA-SOTO,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-06-1687 BB)**

---

Scott M. Davidson, Albuquerque, New Mexico, for Defendant-Appellant Monico
Zuniga-Soto.

William J. Pflugrath, Assistant United States Attorney (Larry Gomez, United
States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-
Appellee.

---

Before **HENRY**, Chief Judge, **McWILLIAMS**, Senior Circuit Judge, and
**HOLMES**, Circuit Judge.

---

**HENRY**, Chief Judge.

Monico Zuniga-Soto pleaded guilty to illegally re-entering the United States in violation of 8 U.S.C. § 1326 and now appeals his sentence. He argues that the district court erred in applying a sixteen-level enhancement to his Guidelines calculation because it incorrectly determined that his prior conviction for assaulting a public servant in violation of section 22.01 of the Texas Penal Code qualified as a "crime of violence" under U.S.S.G. § 2L1.2. Section 2L1.2 defines that term to include any felony under state or federal law that "has as an element the *use, attempted use, or threatened use* of *physical force* against the person of another." U.S.S.G. § 2L1.2(b)(1)(A)(ii); *id.* at cmt. n.1(B)(iii) (emphasis added). Mr. Zuniga-Soto maintains that his prior conviction was not a crime of violence for two reasons: (1) the statute allows convictions for reckless conduct and thus does not require the "use" – *i.e.*, active, intentional employment – of physical force, as required by developing caselaw; and (2) the statute requires proof of causation of injury, but not proof of the use, attempted, or threatened use of physical force and, for that reason also, does not satisfy § 2L1.2's use of physical force requirement.

We agree with Mr. Zuniga-Soto's first argument and reverse the district court's decision. Therefore, we need not decide whether we would reverse the district court's "crime of violence" determination on the basis of Mr. Zuniga-Soto's second contention as well. Prior to addressing the substance of Mr. Zuniga-Soto's contentions, however, we consider whether the application §

-2-

2L1.2's "crime of violence" enhancement provision depends only on the statutory definition of the prior offense, or, in the alternative, whether a court may also examine the conduct underlying the defendant's conviction to determine if he in fact used physical force when committing the prior offense. We hold that § 2L1.2's "as an element" language limits the scope of a proper inquiry to the statutory definition of the prior offense and does not permit judicial examination of the facts behind conviction. As we explain, a court may consider certain judicial records only for the purpose of determining which part of a divisible statute was charged against a defendant and, therefore, which part of the statute to examine on its face. We note that our court has not applied § 2L1.2's "crime of violence" enhancement provision in this manner in every case, which has, unfortunately, resulted in some confusion for district courts. However, we are convinced that the inquiry outlined in this opinion is necessary under § 2L1.2's definition of "crime of violence."

Taking jurisdiction under 28 U.S.C. § 1291, we reverse the district court's determination, vacate Mr. Zuniga-Soto's sentence, and remand for re-sentencing.

## I.  BACKGROUND

**A.  Facts and Procedural History**

In June 2002, Mr. Zuniga-Soto pleaded guilty to assault on a public servant in violation of section 22.01 of the Texas Penal Code. The state court sentenced

Mr. Zuniga-Soto to ten years' imprisonment, suspended. Later, Mr. Zuniga-Soto violated conditions of his suspended sentence, and a Texas state court sentenced him to two years' imprisonment. He was deported to Mexico in February 2004. In June 2006, U.S. Customs and Border Protection agents apprehended Mr. Zuniga-Soto just north of the United States-Mexico border near Sunland Park, New Mexico. He ultimately pleaded guilty to illegally re-entering the United States in violation of 8 U.S.C. § 1326.

Under § 2L1.2, the Guidelines range of an individual who has been convicted of unlawfully re-entering the United States, as Mr. Zuniga-Soto was, must be enhanced by sixteen levels if the defendant has previously been convicted of a felony that qualifies as a "crime of violence" as defined by that section. § 2L1.2(b)(1)(A)(ii). The district court concluded that Mr. Zuniga-Soto's prior offense was a crime of violence because it had "as an element" the use of physical force, and, accordingly, the court imposed a sixteen-level enhancement in Mr. Zuniga-Soto's Guidelines calculation. Mr. Zuniga-Soto objected to the enhancement on the grounds that the *mens rea* component of Texas's assault statute did not require a sufficient level of culpability to qualify as a crime of violence under § 2L1.2's definition of that term because it allowed convictions for reckless conduct.

The district court did not explicitly refer to the elements of assault on a public servant under Texas law when sentencing Mr. Zuniga-Soto. Rather, the

-4-

court cited the conduct underlying Mr. Zuniga-Soto's assault conviction, which was described in the presentence report. According the presentence report, Mr. Zuniga-Soto pleaded guilty to assault in violation of section 22.01 after a physical altercation with police officers during which he bit one officer and kicked another. The court observed: "[I]t's hard for me to envision a scenario in which you can kick one police officer and bite another and not be guilty of a violent crime or intentional assault." Rec. vol. III, at 7-8. Though, it added: "I think [Mr. Zuniga-Soto's alleged] intoxication could possibly negate the intentional [conduct] . . . ." *Id.* at 8. At no point during the sentencing hearing did the court refer to any document other than the presentence report.

Under the Guidelines, the base offense level for a violation of 8 U.S.C. § 1326 is eight. Following his guilty plea, Mr. Zuniga-Soto received a reduction of two offense levels for accepting responsibility. *See* U.S.S.G. § 3E1.1. The government agreed to an additional level of downward adjustment, meaning that, on the whole, Mr. Zuniga-Soto's offense level was reduced by three. The addition of the sixteen-level "crime of violence" enhancement yielded an offense level of twenty-one, or 41-51 months' imprisonment. The district court sentenced Mr. Zuinga-Soto to 41 months' imprisonment in accordance with its Guidelines calculation.

**B.    Statutory Provisions**

It is undisputed that Mr. Zuniga-Soto pleaded guilty to assaulting a public servant in violation of TEX. PEN. CODE § 22.01. That statute provides:

(a) A person commits an [assault] if the person:
*(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse*;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

(b) *An offense under Subsection (a)(1)* is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
(1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty . . . .

TEX. PEN. CODE § 22.01(a)-(b) (emphasis added). We note that subsection (b)(1), the assault on a public servant provision, refers only to subsection (a)(1). Thus, in order to have been guilty of violating subsection (b)(1), Mr. Zuniga-Soto must have violated (a)(1). Subsections (a)(2) and (a)(3) are therefore irrelevant to our inquiry.

As we noted above, § 2L1.2(b)(1)(A)(ii) mandates a sixteen level increase in the Guidelines calculation of a defendant who has been convicted of illegally re-entering the United States in violation of 8 U.S.C. § 1326 if the defendant was previously convicted of a felony that qualifies as a "crime of violence." However, § 2L1.2(b)(1)(A)(ii) does not define the term. Our inquiry is guided by the definition of "crime of violence" provided in the commentary

-6-

accompanying § 2L1.2. *United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004) ("Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Under § 2L1.2's definition, there are two ways in which a prior felony conviction may be properly characterized as a crime of violence. First, a felony automatically qualifies if it is one of twelve enumerated offenses. § 2L1.2 cmt. n.1(B)(iii). Alternatively, "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another" and is a felony is a crime of violence under § 2L1.2. *Id.*

The district court did not find, and the government has not argued, that Mr. Zuniga-Soto's prior offense could be properly characterized as one of the offenses listed in Comment 1(B)(iii). And, neither party contends that the offense at issue had as an element the attempted, or threatened use of physical force. Therefore, our sole task is to determine whether the district court correctly concluded that Mr. Zuniga-Soto's prior felony conviction qualifies as a crime of violence because the offense had as an element the *use* of physical force. *Id.*

## C.     The Parties' Contentions

On appeal, Mr. Zuniga-Soto argues that his prior conviction did not have as an element the use of physical force because the Texas assault statute's *mens rea* component could be satisfied by recklessness. Mr. Zuniga-Soto's contention

relies primarily on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), in which the Supreme Court held that a criminal statute without a *mens rea* component did not qualify as a "crime of violence" under 18 U.S.C. § 16, which supplies a definition of that term for use in conjunction with certain sentence enhancement provisions. Mr. Zuniga-Soto correctly notes that the Court's discussion of § 16 is relevant to our inquiry in this case because the statute supplies two definitions of "crime of violence," one of which, § 16(a), also requires that a "crime of violence" have "as an element the use, threatened use, or attempted use of physical force."[1] Similarly, § 16(b) defines the term to include any offense that, "by its nature, involves a substantial risk" of the use of physical force against a person or property.

The *Leocal* Court, Mr. Zuniga-Soto observes, reasoned that the "use" of physical force implies the active employment of force. *Leocal*, 543 U.S. at 9.

_____

[1] The full text of 18 U.S.C. § 16 defines a "crime of violence" as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The definitions of "crime of violence" under § 16(a) and Comment 1(B)(iii) of § 2L1.2 differ only in that under § 16(a) a "crime of violence" may be an offense committed against property. Under § 2L1.2's definition, an offense does not qualify as a crime of violence unless it entails the use, attempted, or threatened use of physical force against a person.

-8-

The Court explained that negligent or merely accidental conduct does not rise to the level of active employment and therefore cannot meet § 16's use of physical force requirement. *Id.* Mr. Zuniga-Soto points out that many of our sister circuits have concluded that, in light of *Leocal*, reckless conduct does not satisfy the use of physical force requirement under § 2L1.2's definition of "crime of violence" or under § 16, and he asks us to adopt their rule.

Additionally, Mr. Zuniga-Soto argues that his prior conviction is not a "crime of violence" under § 2L1.2's definition of that term because under the Texas assault statute one may be guilty of assault by merely causing injury to another. While Mr. Zuniga-Soto concedes that an individual could commit assault on a public servant in violation of section 22.01 by using physical force, he argues that the use of physical force is not part of the definition of assault on a public servant under the Texas statute and is therefore not an element of the offense. Thus, for that reason as well, the offense could not qualify as a crime of violence. Mr. Zuniga-Soto did not raise this argument before the district court.

The government's position is that, under the Supreme Court's decisions in *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), we may find Mr. Zuniga-Soto's prior conviction to be a "crime of violence" under § 2L1.2 by examining his indictment and plea agreement to determine whether he in fact intentionally used physical force when assaulting a public servant in Texas. Mr. Zuniga-Soto's recklessness argument is irrelevant,

the government contends, because the disjunctive construction of the *mens rea* component of Texas's assault statute – a person is guilty under the statute if he "intentionally, knowingly, *or* recklessly causes bodily injury to another," TEX. PEN. CODE 22.01(a)(1) (emphasis added) – permitted the sentencing court to determine whether Mr. Zuniga-Soto acted intentionally or knowingly, as opposed to recklessly. According to the government, it is clear from the facts alleged in the indictment that Mr. Zuniga-Soto pleaded guilty to intentionally assaulting a police officer.

## II. DISCUSSION

Whether a prior offense constitutes a "crime of violence" under § 2L1.2 presents a question of statutory interpretation, and we review the district court's conclusion *de novo*. *See United States v. Treto-Martinez*, 421 F.3d 1156, 1157-58 (10th Cir. 2005). In this case, Mr. Zuniga-Soto argued before the district court that the *mens rea* component of Texas's assault statute did not satisfy § 2L1.2's use of physical force requirement. Thus, we review the district court's determination with respect to that claim de novo.

When a defendant fails to object to a sentencing determination before the district court, we may review the court's decision only for plain error, applying the four-part analysis articulated by the Supreme Court in *United States v. Olano*, 507 U.S. 725, 732 (1993). *United States v. Brown*, 316 F.3d 1151 (10th Cir. 2003). Under *Olano*'s plain error analysis, we may exercise our discretion to

-10-

reverse an error to which a defendant did not object only if we find four elements: "(1) error; (2) that is plain . . . (3) that affects substantial rights," *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks, citations omitted), and that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

Our analysis is divided into three parts. We begin by observing that, under § 2L1.2's "as an element" language, the sentencing court's inquiry is limited to the statutory definition of the prior offense, and not the facts underlying a defendant's prior conviction. As we explain, if the statute of prior conviction includes multiple definitions of an offense, some of which require proof of the use of force, and some of which do not, then a court may examine certain judicial records for the limited purpose of determining which part of the statute was charged against the defendant.

Second, we hold that in this case Mr. Zuniga-Soto's prior conviction is not a crime of violence under § 2L1.2 because the portion of the Texas assault statute under which he pleaded guilty permits convictions for reckless conduct. In reaching this conclusion, we are guided by the Supreme Court's observation in *Leocal* that negligent or merely accidental conduct does not satisfy § 16's use of physical force requirement. 543 U.S. at 9. Additionally, we survey our own precedent and several decisions from our sister circuits.

-11-

Finally, as we explain below, our disposition of Mr. Zuniga-Soto's first argument obviates the need for plain error review with respect to his second claim.

## A. The Appropriate Scope of an Inquiry Under § 2L1.2's "Crime of Violence" Enhancement Provision

Before addressing the substance of Mr. Zuniga-Soto's claims, we must first consider whether a court applying § 2L1.2's "crime of violence" enhancement provision may examine certain judicial records in order to determine whether the defendant in fact used physical force when violating a particular statute. The government argues in favor of this approach. We disagree with the government because, in our view, the phrase "as an element" in § 2L1.2's definition of "crime of violence" directs courts to consider only the statutory definition of the prior offense, and not the means by which the individual offender violated the statute in a particular case. Thus, we conclude that when applying § 2L1.2's crime of violence enhancement provision a court must simply determine whether the use, attempted or threatened use of physical force is part of the statutory definition of the offense of prior conviction.

### 1. *"as an element"*

Section 2L1.2's "crime of violence" enhancement provision applies only if Mr. Zuniga-Soto has been convicted of a felony "that has *as an element* the use . . . of physical force." § 2L1.2 cmt. n.1(B)(iii) (emphasis added). While Comment 1(B)(iii) does not define "element," the term has an obvious meaning in this

-12-

context. It refers to "a constituent part of a claim that must be proved for the claim to succeed." BLACK'S LAW DICTIONARY 539 (8th ed. 2004). "To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense that must be proved *in every case* to sustain a conviction under a given statute." *United States v. Beltran-Mungia*, 489 F.3d 1042, 1045 (9th Cir. 2007) (citations and internal quotation marks omitted) (emphasis in original). *See also Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (noting that a criminal defendant is entitled "to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt") (alterations and internal quotation marks omitted); *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The elements of an offense depend on the offense's definition under law, not on the facts underlying an individual's conviction. In other words, "[w]hat [the defendant] actually did is irrelevant to whether the statute has [a particular] element. The elements are the elements, and they can be determined only by reading and interpreting the statute itself." *United States v. Maldonado-Lopez*, 517 F.3d 1207, 1211 (10th Cir. 2008) (McConnell, J. concurring). Accordingly, when we endeavor to determine whether a prior conviction is a "crime of violence" under § 2L1.2's definition of that term, the phrase "as an element"

directs us to "examine only the elements of the statute of conviction and disregard the specific factual circumstances underlying the defendant's prior arrest." *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007). *See also United States v. Martinez-Hernandez*, 422 F.3d 1084, 1087 (10th Cir. 2005) (observing that § 2L1.2's definition of "crime of violence" "asks us to look to the elements of the statute of conviction . . . [it does not] direct[] our attention to the underlying facts"). In *Taylor*, the Supreme Court characterized this type of inquiry as a "categorical approach," which entails "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." 495 U.S. at 600.

Developing caselaw further clarifies that § 2L1.2's definition of "crime of violence" requires courts to consider the prior offense's statutory definition, and not the facts of the underlying conviction. Indeed, the Supreme Court observed in *Leocal* that the "language [of § 16] requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." 543 U.S. at 7. *See also Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003) (Easterbrook, J.) ("The immigration officials ask us to examine what Flores actually did . . . . The problem with that approach lies in the language of § 16(a), which specifies that the offense of conviction must have 'as an element' the use or threatened use of physical force.") (citation omitted); *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) (noting that "only the

-14-

minimum criminal conduct necessary to sustain a conviction under a given statute is relevant" to whether a prior conviction qualifies as a crime of violence under § 16) (internal quotation marks omitted).

We also note that the Office of Legal Counsel at the Department of Justice (OLC) recently adopted the same view of 18 U.S.C. § 921(a)(33)(A)(ii), a statute that defines a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force." *See Maldonado-Lopez* 517 F.3d at 1211 (McConnell, J. concurring). According to the OLC, the phrase "as an element" limits the sentencing court's inquiry with respect to a prior offense to a determination of the "factual predicate specified by law and required to support a conviction." When a Prior Conviction Qualifies as a "Misdemeanor Crime of Domestic Violence," 31 Op. Off. Legal Counsel (May 17, 2007) at *2, *available at* http://www.usdoj.gov/olc/2007/atfmcdv-opinion.pdf. Thus, an inquiry under the "as an element" language entails "simply determining 'the elements *set forth in the statute*.'" *Id.* at *3-4 (quoting *United States v. Shelton*, 325 F.3d 553, 558 n.5 (5th Cir. 2003)) (emphasis added by OLC).

### 2. *The proper use of judicial records in an inquiry under § 2L1.2's "crime of violence" enhancement provision*

Contrary to the government's assertions in this case, the Supreme Court's holdings in *Taylor* and *Shepard* do not permit us to examine judicial records to determine whether Mr. Zuniga-Soto in fact used physical force when violating Texas's assault statute. In those cases, the Court outlined a method by which

sentencing courts could determine whether prior convictions qualify as one of the generic offenses (*e.g.*, burglary) labeled "violent felonies" in 18 U.S.C. 924(e)(2)(B)(ii), a sentence enhancement provision under the Armed Career Criminal Act. *See Taylor*, 495 U.S. at 601-602; *Shepard*, 544 U.S. at 16-18. The Court recognized that, in light of differing labels and definitions of the same offenses among the states, sentencing courts' reference to certain judicial records would enable judges to discern what facts a jury was required to find in order to convict the defendant. Under *Taylor* and *Shepard*, once a court has identified the facts necessary to support a conviction under a state statute, it may ascertain whether the jury was required to find facts that would also satisfy the definition of one of § 924(e)'s predicate offenses. *See Taylor*, 495 U.S. at 602; *Shepard*, 544 U.S. at 26.

For example, the *Taylor* Court recognized that generic burglary, a "violent felony" under § 924(e), consisted of "at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598. In *Shepard*, the Court identified several distinct acts that could be charged under Massachusetts's burglary statute. Two of the possibilities (entry into a building or structure) satisfied *Taylor*'s definition of generic burglary, and two (entry into a boat or car) did not. *Shepard*, 544 U.S. at 17. While the *Shepard* Court observed that, as a general rule, sentencing courts should "look only to the fact of conviction and the

-16-

definition of the prior offense," it recognized an "exception" for "'a narrow range of cases where a jury [in a State with a broader definition of burglary] was actually required to find all the elements of' the generic offense" in order to convict under a statute that permitted conviction for a broader range of conduct. *Id.* (quoting *Taylor* 495 U.S. at 602). The same exception, which we have in some instances referred to as a "modified categorical approach," *e.g.*, *Batrez Gradiz v. Gonzalez*, 490 F.3d 1206, 1211 (10th Cir. 2007), applies to guilty pleas that "necessarily admitted elements of generic offense" as determined by "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26 (emphasis added).

In discussing generic offense enhancement provisions, Judge Easterbrook has pointed out that "[t]he list in *Shepard* is designed to illuminate documents that identify *what crime* the defendant committed . . . . [W]hat matters is the fact *of* conviction, rather than the facts *behind* the conviction." *United States v. Lewis*, 405 F.3d 511, 515 (7th Cir. 2005) (Easterbrook, J.) (emphasis in original). We agree with Judge Easterbrook. Neither *Taylor* nor *Shepard* authorized sentencing courts to examine judicial records for the purpose of determining what the defendant actually did, regardless of the command of the enhancement

provision at issue.[2]  Nor did *Taylor* and *Shepard* authorize sentencing courts to make independent assessments of pleaded conduct (*e.g.*, determining whether conduct was violent or intentional) when applying an enhancement provision that requires courts to identify the elements of a prior offense.  In fact, the *Taylor* Court noted that, with respect to § 924(e), Congress intended to avoid judicial inquiry into the facts behind a prior conviction.  *See Taylor*, 495 U.S. at 601 (finding there to be no support in § 924(e)'s legislative history for the possibility "that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case").

Comment 1(B)(iii)'s "as an element" language demands an even narrower inquiry than generic offense enhancement provisions in that it directs sentencing courts to consider only whether the statute of conviction required proof of the use, threatened use, or attempted use of physical force.  § 2L1.2 cmt. n.1(B)(iii).

---

[2]  We do not hold that *Shepard* and *Taylor* prohibit the use of judicial records for inquiry into the facts behind a conviction.  Whether such an inquiry is appropriate depends on the requirements of the enhancement provision at issue in a particular case.  While Comment 1(B)(iii)'s "as an element" language does not allow for judicial analysis of the facts underlying a defendant's conviction, other enhancement provisions do.  Indeed, "when the language of the enhancement [provision] requires courts to look at the specific facts underlying the prior offense, courts employ a factual approach, looking not only at the terms of the statute of conviction, but also at the underlying facts." *Martinez-Hernandez*, 422 F.3d at 1087.  For example, we have held that § 2L1.2(b)(1)(A)(vii), under which the Guidelines calculation of a defendant must be enhanced 16 levels if the individual has previously been convicted of "an alien smuggling offense committed for profit," permits sentencing courts to examine the underlying facts of the prior conviction. *United States v. Martinez-Candejas*, 347 F.3d 853, 855 (10th Cir. 2003).

Whereas generic offense enhancement provisions, such as the one at issue in *Shepard* and *Taylor*, require that, in some instances, courts look *beyond* the statutory definition of an offense to determine whether a crime committed under an broader state statute fits within the narrower federal definition of the generic offense, Comment 1(B)(iii) demands that sentencing courts look *at* (and not beyond) the statute of conviction in order to identify the elements of the offense.

Consistent with Comment 1(B)(iii)'s focus the statutory definition of the offense of prior conviction, a sentencing court applying § 2L1.2's "crime of violence" enhancement provision may consult the judicial records approved in *Shepard* in order to ascertain which definition of a crime to evaluate in the event that a statute defines a particular offense in more than one way. Specifically, the court may examine judicial records in order to determine which "part of the statute was charged against the defendant" and, thus, "which portion of the statute to examine on its face." *Sanchez-Garcia*, 501 F.3d at 1211 (citations and internal quotation marks omitted). We emphasize that this examination does not entail "a subjective inquiry as to whether the particular factual circumstances underlying the conviction" satisfy the criteria of the enhancement provision. *Id. See also United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003) (observing that, when applying § 16, "a court must look to the statutory definition, not the underlying circumstances of the crime") (internal quotation marks omitted).

### 3. *Intra-Circuit Conflict*

Our court's analysis has not always focused on the elements of the prior conviction when interpreting § 2L1.2's definition of "crime of violence." In some cases, we have authorized an inquiry beyond the statutory definitions of crimes. *E.g.*, *United States v. Maldonado-Lopez*, 517 F.3d 1207, 1209 (10th Cir. 2008) (noting that a sentencing court applying § 2L1.2's definition of "crime of violence" may "deviate from the categorical approach to determine whether a conviction under [a Colorado harassment statute] is a crime violence"); *United States v. Hernandez-Garduno*, 460 F.3d 1287, 1294 (10th Cir. 2006) (observing that "[i]f the charging documents, plea agreement, transcript of a plea colloquy, or sentencing court findings of the prior state court conviction demonstrate that third-degree assault did, in fact, involve the use . . . of physical force, then the particular defendant's prior assault conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A)(ii)").

Nevertheless, this circuit's rule that, "when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom," *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996), requires our adherence to the principle that a sentencing court applying § 2L1.2's definition of "crime of violence" must consider only the statutory definition of the prior offense and not the specific factual circumstances underlying the defendant's conviction. Though some of our recent opinions have deviated from

-20-

this approach, prior to the Supreme Court's decision in *Shepard*, it was settled in our circuit that "the express focus" of § 2L1.2's definition of "crime of violence" was "on the elements of the state crime at issue rather than the unique underlying circumstances of the crime." *Torres-Ruiz*, 387 F.3d at 1182. *See also Venegas-Ornelas*, 348 F.3d at 1275 (applying a similar approach in interpreting § 2L1.2(b)(1)'s definition of "aggravated felony"). Thus, this opinion is consistent with our court's settled law regarding the application § 2L1.2's "crime of violence" enhancement provision.

**4.     *The Elements of Assault on a Public Servant Under Texas Law***

We now turn to the elements of assault on a public servant under section 22.01 of the Texas Penal Code. In this case, the relevant provisions of the statute of conviction are undisputed. Mr. Zuniga-Soto pleaded guilty to assaulting a public servant in violation of section 22.01(b)(1), which provides: "[a]n offense under Subsection (a)(1) . . . is a felony of the third degree if the offense is committed against[] a person the actor knows is a public servant while the public servant is lawfully discharging an official duty . . . ." TEX. PEN. CODE § 22.01(b)(1). Because subsection (b)(1) refers only to (a)(1), it is not necessary in this case to consider judicial records to determine which part of the statute to examine on its face.

Looking to Texas courts for interpretive guidance, we find that in order to obtain a conviction for assault under subsection (a)(1), the government must

prove beyond reasonable doubt that the defendant "intentionally, knowingly, *or* recklessly cause[d] bodily injury to another." *Johnson v. State*, 172 S.W.3d 6, 10 (Tex. Crim. App. 2005) (citing TEX. PEN. CODE § 22.01(a)(1)) (emphasis added). In order to obtain a conviction for assault on a public servant, the government must demonstrate a violation of (a)(1), and it most prove that the offender knew that the person he assaulted was "a public servant . . . lawfully discharging an official duty." TEX. PEN. CODE § 22.01(b)(1). Thus, under Texas's assault statute, as confirmed by our review of Texas case law, the state needed only to prove that Mr. Zuniga-Soto acted with a *mens rea* of recklessness when he caused the bodily injury of a individual whom he recognized as a police officer or other public servant.

The government argues that, because the Texas assault statute's *mens rea* component is disjunctive, we may consult judicial records to determine whether Mr. Zuniga-Soto admitted to intentional or knowing conduct, but not recklessness. *See* TEX. PEN. CODE 22.01(a)(1) (a person is guilty of assault if he "intentionally, knowingly, *or* recklessly causes bodily injury") (emphasis added). That argument cannot prevail here. To the extent that the government contends that the district court could have evaluated Mr. Zuniga-Soto's pleaded conduct to determine whether he acted knowingly or intentionally, its argument is inconsistent with an appropriate application of § 2L1.2's "crime of violence" enhancement provision. As we noted in Section III.A.2, the court must limit its

inquiry to the statutory definition of the offense of conviction, and the court may consult judicial records only for the purpose of determining which portion of a statute was charged against the defendant.

In this case, the record supplies no reason for us to exclude the recklessness *mens rea* from our examination of section 22.01's definition of assault on a public servant. If Mr. Zuniga-Soto were charged simply with a violation of section 22.01(a)(1), an offense defined to include reckless conduct, then the state could have obtained a conviction by proving only recklessness. There is no indication that the state explicitly charged Mr. Zuniga-Soto with intentional or knowing (but not reckless) conduct. In fact, the government cites no case from Texas courts – and we have found none – in which a jury had to find that an individual was guilty of intentionally or knowingly, but not recklessly, assaulting someone under section 22.01(a)(1). In short, even though the statute's *mens rea* component is grammatically divisible, we see no evidence that Mr. Zuniga-Soto was convicted under a part of the section 22.01 that excluded recklessness from its definition of assault. Therefore, we must include recklessness in our examination of the statute's definition of assault on a public servant.

## B.     The Texas assault statute's *mens rea* component and Comment 1(B)(iii)'s use of physical force requirement

Having determined that under Texas's assault statute Mr. Zuniga-Soto could have been convicted for reckless conduct, we must now consider whether a *mens rea* component of recklessness may satisfy Comment 1(B)(iii)'s use of

physical force requirement. We hold that it may not. As we explain below, our conclusion is guided by three factors: (1) the Supreme Court's holding in *Leocal v. Ashcroft*, 543 U.S. 1 (2004); (2) a survey of our own precedent; and (3) the persuasive reasoning of our sister circuits.

**1.**     ***Whether recklessness may satisfy Comment 1(B)(iii)'s use of physical force requirement***

In *Leocal*, the Supreme Court held that a Florida drunk driving statute did not meet 18 U.S.C. § 16's use of physical force requirement because an individual could be convicted under the statute for negligence or accidental conduct. 543 U.S. at 11. Noting that a crime of violence must be one that involves the "use . . . of physical force," the Court observed that "'use' requires active employment." *Id*. at 9 (citation omitted). The Court explained

> While one may, in theory, actively employ *something* in an accidental manner, *it is much less natural to say that a person actively employs physical force against another person by accident.* Thus a person would 'use . . . physical force against' another when pushing him; however, we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him.

*Id.* (emphasis added) (citation omitted). The Court concluded that the "use . . . of physical force against the person or property of another [] most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* Thus, the offense of causing an injury while driving intoxicated was not a crime of violence because it did not require the offender to actively employ force against the person or property of another. However, the Court did not consider whether

-24-

"proof of the *reckless* use of force against a person or property of another qualifies as crime of violence." *Id.* at 13 (emphasis in original).

In accordance with *Leocal*, this court has recognized that "DUI offenses that do not have a *mens rea* component or require only a showing of negligence in the operation of a motor vehicle do not qualify as a crime of violence [under 18 U.S.C. 16]." *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005). We have also noted that § 2L1.2's definition of crime of violence "implies that some intentional availment of force is required before an offense rises to the level of a crime of violence . . . ." *United States v. Moore*, 420 F.3d 1218, 1223 (10th Cir. 2005). However, in the time since the Supreme Court decided *Leocal* we have not had an occasion to decide whether a crime with a *mens rea* of recklessness could satisfy the use of physical force requirement in order to be classified as a crime of violence under § 2L1.2 or any statute with an identically worded definition.

One of this court's footnotes in *United States v. Zunie* cited a pre-*Leocal* case for the proposition that a crime with a *mens rea* of recklessness could qualify as "a crime of violence within the meaning of 18 U.S.C. § 16(a)." 444 F.3d 1230, 1235 n.2 (10th Cir. 2006) (citing *United States v. Reano*, 298 F.3d 1208, 1210 (10th Cir. 2002)). The statement was dicta, and it does not control our determination here. The issue before the *Zunie* court was whether the government had presented sufficient evidence at trial to sustain a conviction under 18 U.S.C.

-25-

§ 113(a)(6), assault resulting in serious bodily injury. The court's footnote was a brief response to defendant-appellant Zunie's clearly errant argument that, in light of *Leocal*, he could not be convicted for merely reckless conduct. The court was absolutely correct in holding that proof of recklessness could sustain a conviction for assault resulting in serious bodily injury under § 113(a)(6). *Id*. *Leocal*'s holding concerned a different matter: whether accidental or negligent conduct satisfied § 16's use of physical force requirement.

Many of our sister circuits have held that crimes requiring only recklessness are not crimes of violence under § 16 or § 2L1.2. For example, the Third Circuit interpreted *Leocal* as precluding classification of vehicular homicide as a crime of violence under § 16 because the New Jersey statute at issue required only proof of reckless conduct. *Oyebanji v. Gonzales*, 418 F.3d 260, 264-65 (3d Cir. 2005) (Alito, J.). Per then-Judge Alito's opinion, the *Oyebanji* court noted in reference to *Leocal* that it "[could not] overlook the Court's repeated statement that 'accidental' conduct (which would seem to include reckless conduct) is not enough to qualify as a crime of violence." *Id*. at 264. Similarly, the Fourth Circuit has observed that the Court's reasoning "strongly indicates that the result in *Leocal* would have been the same even had the statute there at issue required recklessness rather than mere negligence." *Bejarano-Urritia v. Gonzales*, 413 F.3d 444, 447 (4th Cir. 2005) (holding that a

drunk driver's conviction for involuntary manslaughter was not a crime of violence under § 16).

The Eighth and Ninth Circuits have also held that, under *Leocal*, recklessness cannot satisfy § 16's use of physical force requirement. *United States v. Torres-Villalobos*, 487 F.3d 607, 616 (8th Cir. 2007) (holding that "the 'use of force,' as *Leocal* interpreted that phrase, is not an element of a second-degree manslaughter conviction" because the statute could be satisfied by a *mens rea* of recklessness); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) ("[T]he reckless use of force is accidental and crimes of recklessness cannot be crimes of violence [under § 16].").  The Sixth Circuit has applied the same logic to § 2L1.2, holding that "a crime requiring only recklessness does not qualify as a crime of violence under [U.S.S.G. § 2L1.2(b)(1)(A)(ii)]." *United States v. Portela*, 469 F3d 496, 499 (6th Cir. 2006).

Some circuits reached the same conclusion before *Leocal*.  *E.g.*, *Jobson v. Ashcroft*, 326 F.3d 367, 372-76 (2d Cir. 2003) (holding that a New York second degree manslaughter statute was not a crime of violence because it required only that the offender cause the death of another person through recklessness); *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001) (holding that a drunk driving offense did not qualify as a crime of violence under § 16 because "use of physical force . . . is most reasonably read to refer to intentional conduct, not an accidental, unintended event"); *Bazan-Reyes v. INS*, 256 F.3d 600, 609-12 (7th

Cir. 2001) (holding that homicide by intoxicated use of a motor vehicle, which required only a *mens rea* of recklessness, was not a crime of violence under § 16 because it did not require the intentional use of force).

In light of the persuasive reasoning of our sister circuits, we are convinced that recklessness falls into the category of accidental conduct that the *Leocal* Court described as failing to satisfy the use of physical force requirement under either of § 16's definitions of "crime of violence."  *See Leocal*, 543 U.S. at 9.  We therefore hold that a *mens rea* of recklessness does not satisfy use of physical force requirement under § 2L1.2's definition of "crime of violence."

**2.      *Application of our conclusion to Mr. Zuniga-Soto's appeal***

Under Texas's assault statute, a defendant could be convicted of assaulting a public servant if, for example, the defendant's reckless behavior led to an unintended collision with a uniformed police officer.  The state need not have proven that Mr. Zuniga-Soto actively employed physical force against a public servant.  Thus, the "use . . . of physical force" was not an element of the offense of conviction, and the district court erred in determining that Mr. Zuniga-Soto had been convicted of a "crime of violence" under § 2L1.2(b)(1)(A)(ii).

**C.     The Erroneous Interpretation of § 2L1.2**

Mr. Zuniga-Soto's second challenge to the district court's characterization of his Texas assault statute as a crime of violence arises from his observation that under TEX PEN. CODE § 22.01(a)(1) an individual is guilty of assault if he "causes

bodily injury." He contends that the district court erroneously interpreted § 2L1.2 when it concluded that his prior conviction was a "crime of violence" because, under Texas statute's definition of assault, he could have been convicted merely with proof that he caused injury to a police officer and without proof that he employed physical force.

Because Mr. Zuniga-Soto did not raise this argument before the district court, we may review the district court's decision only for plain error. We have held that "the imposition of a sentence based on an erroneous interpretation of law constitutes plain error," *United States v. Malone*, 222 F.3d 1286, 1292 (10th Cir. 2000). *Cf. Brown*, 316 F.3d at 1158, 1161 (finding no plain error where the district court's erroneous application of the Guidelines resulted in an increase of only one offense level and the defendant/appellant failed to contend that the district court's error seriously affected the fairness, integrity, or public reputation of judicial proceedings). However, in Section III.B, we held that Mr. Zuniga-Soto's prior conviction does not qualify as a "crime of violence" under § 2L1.2's definition of that term because Texas law defined Mr. Zuniga-Soto's prior offense, assault on a public servant, to include reckless conduct. Therefore, we need not decide whether we would exercise our discretion to reverse the district court's determination on the basis of Mr. Zuniga-Soto's second contention as

well.[3]  *Cf. United States v. Fields*, 516 F.3d 923, 951 (10th Cir. 2008)

_____

[3]  Mr. Zuniga-Soto's second argument raises a valid point.  As we explained in Section III.A, a prior conviction does not qualify as a "crime of violence" under § 2L1.2 unless proof of the use, attempted use, or threatened use of physical force is part of the statutory definition of the offense.  We have explained that "physical force" in this context refers to "destructive or violent force."  *Venegas-Ornelas*, 348 F.3d at 1275.  *See also* BLACK'S LAW DICTIONARY 673 (defining "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim").  In *United States v. Perez-Vargas*, we determined that a Colorado assault statute, which, like section 22.01(a)(1) of the Texas Penal Code, required only that the offender "cause[] bodily injury," did not meet the use of physical force requirement in § 2L1.2's definition of "crime of violence."  414 F.3d 1282, 1285 (10th Cir. 2005) (quoting Colo. Rev. Stat. § 18-3-204) (emphasis omitted).  We noted that the causation requirement employed by the Colorado assault statute, and, in this case, by the Texas assault statute, "looks to the *consequences* of the conduct, however applied, whereas the Guidelines look to the *type* of conduct that causes the injury."  *Id.* (emphasis added).

We have examined caselaw from Texas courts and found no opinion holding that assault on a public servant requires proof of the use, attempted use, or threatened use of physical force.  *See, e.g.*, *Johnson*, 172 S.W.3d at 10 (noting that the state need only prove beyond reasonable doubt that the defendant "cause[d] bodily injury to another").  Thus, it appears that under the provision of the Texas assault statute at issue a defendant "could be convicted . . . for an injury caused *not by physical force*, but by guile, deception, or deliberate omission."  *Perez-Vargas*, 414 F.3d at 1286 (quoting *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003)) (emphasis added).

Because section 22.01(a)(1) of the Texas Penal Code permits convictions based on the mere causation of physical injury without proof of the use, attempted use, or threatened use of physical force, it does not qualify as a crime of violence under § 2L1.2's definition of that term.  Even if Mr. Zuniga-Soto had been charged with intentionally or knowingly (but not recklessly) causing bodily injury to a public servant, the focus of the Texas statute on the consequences of his conduct rather than the means by which he caused bodily injury deprives the statute of Comment 1(B)(iii)'s requisite element of physical force.  Indeed, the Fifth Circuit has concluded that this exact provision of the Texas Penal Code did not satisfy § 16(a)'s virtually identical definition of "crime of violence."  *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006) ("[T]he

(continued...)

-30-

("[R]eversal for unpreserved error on plain-error review is discretionary, not mandatory.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the district court's decision is REVERSED. This matter is REMANDED to the district court with instructions to VACATE Mr. Zuniga-Soto's sentence and re-sentence him in a manner consistent with this opinion.

---

[3](...continued)
government would not need to show the defendant used physical force against the person or property of another. Thus, use of force is not an element of assault under section 22.01(a)(1) [of the Texas Penal Code], and the assault offense does not fit subsection 16(a)'s definition for crime of violence.").