**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

URIEL SANTOS-SANTOS,

Defendant - Appellant.

No. 10-1380
(D.C. No. 10-CR-00094-PAB-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

Defendant-Appellant Uriel Santos-Santos appeals from his sentence for
illegal reentry after deportation subsequent to an aggravated felony conviction. 8
U.S.C. § 1326(a), (b)(2). He contends that the district court erred in applying a
16-level offense adjustment pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), resulting
in a 57-month sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18
U.S.C. § 3742(a), and we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## Background

In March 2004, in the Superior Court of Santa Clara County, California, Mr. Santos-Santos, a Mexican citizen, was convicted of (1) inflicting corporal injury on a spouse with a specified prior conviction within seven years and (2) assault by means of force likely to produce great bodily injury. 3 R. 10. In 2007 he was deported to Mexico, but in January 2010 immigration officials discovered him in Arapahoe County Jail, in Centennial, Colorado. 3 R. 10; 1 R. 12. That April, Mr. Santos-Santos pleaded guilty to the instant federal offense. 1 R. 2 (Doc. 13), 7.

The Presentence Report ("PSR"), on the basis of Mr. Santos-Santos's assault conviction, reflected an offense adjustment of 16 offense levels under §2L1.2(b)(1)(A)(ii), for defendants who have unlawfully reentered after a conviction for a "crime of violence." This produced an advisory Guideline range of 57-71 months' imprisonment. Mr. Santos-Santos unsuccessfully objected to the PSR on the grounds he argues here.

## Discussion

Whether a conviction under California Penal Code § 245(a)(1) constitutes a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) is a question of law that we review de novo. United States v. Ruiz-Rodriguez, 494 F.3d 1273, 1275 (10th

Cir. 2007). Section 245(a)(1), at the time of Mr. Santos-Santos's conviction, imposed criminal penalties on "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." An "assault," in turn, under California Penal Code § 240, is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

Sentencing Guideline § 2L1.2 ("Unlawfully Entering or Remaining in the United States"), in subsection (b)(1)(A)(ii), provides for an increase of 16 offense levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after...a conviction for a felony that is...a crime of violence." The application note explains that a "crime of violence" consists in any of twelve enumerated offenses or "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Mr. Santos-Santos argues that California Penal Code § 245(a)(1), as construed by California courts, permits conviction of defendants whose mental state is shown only to have been reckless, possibly even negligent. A "crime of violence," by contrast, requires proving that a defendant acted with a mental state more culpable than negligence, Leocal v. Ashcroft, 543 U.S. 1 (2004), or recklessness, United States v. Zuniga-Soto, 527 F.3d 1110 (10th Cir. 2008). The

term "crime of violence" is defined in 18 U.S.C. § 16(a)—a definition that informs this particular guideline, since the material language is the same in both places—as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person . . . of another."

In Leocal, the Supreme Court held that a Florida law that punished injury-causing DUIs did not constitute a "crime of violence." A crime of violence requires the "use…of physical force"; "use," in turn, implies the "intentional" and "active" application of force. 543 U.S. at 8-9. But the harm inflicted by a DUI could possibly be the result of the driver's negligence, not any particular intent on his part to cause injury. We distinguish in the same way between shoving a person (intentional) and stumbling into that person (accidental or negligent). Id. at 9. In Zuniga-Soto, this court extended Leocal to reckless conduct. Zuniga-Soto involved a Texas statute that punished "intentionally, knowingly, or recklessly caus[ing] bodily injury" to public servants. 527 F.3d at 1114. The court held that a "mens rea of recklessness does not satisfy [the] use of physical force requirement under Sentencing Guideline § 2L1.2's definition of 'crime of violence.'" Id. at 1124. It reasoned that, although many convictions under the law are obtained against defendants who acted intentionally, the prosecution need only prove a mental state of recklessness.

A conviction upon such a mental state is problematic, since the language of § 16(a) provides that crimes of violence must have this use of force "as an element," i.e., as a constituent part of the offense that the prosecution must establish to convict. Courts, then, must only "look to the elements…of the offense of conviction, rather than to the particular facts relating to petitioner's crime." Leocal, 543 U.S. at 7; U.S. v. Zuniga-Soto, 527 F.3d at 1118. Because § 2L1.2 also contains the "as an element" limitation, the sentencing court's inquiry is likewise confined to examining the statutory definition of the prior offense. The Florida and Texas statutes at issue in Leocal and Zuniga-Soto both had the potential to punish conduct that did not necessarily (or categorically) constitute a "crime of violence." California Penal Code § 245(a)(1), for its part, specifies on its face no particular state of mind requirement—an "element" of any crime. The question of whether that law is a "crime of violence," then, requires us to determine what the California courts have declared the law's mens rea to be.

Mr. Santos-Santos maintains that, in California, he could be found "guilty of an assault under § 245(a)(1) without intending to use physical force against another," Aplt. Br. 10; thus the "mens rea for committing the offense does not satisfy the active-employment test of Leocal and this court's precedent." Aplt. Br. 13. He points to People v. Williams, 29 P.3d 197 (Cal. 2001), the California Supreme Court's controlling opinion on the mental state required to convict for

assault.  Mr. Santos-Santos selects a phrase from that decision—namely, that a defendant "must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct," Williams, 29 P.3d at 203—and contends that such a standard "sounds largely in recklessness."[1]  Aplt. Br. 14.  But Williams explicitly held otherwise: "As explained below…assault is a general intent crime," id. at 200; "Assault is still a general intent crime," id. at 203; "mere recklessness or criminal negligence is still not enough," id.; "assault…requires an intentional act," id. at 204.

Degrees of culpability are notoriously elusive of firm definition.  Not only do they involve fine psychological and metaphysical distinctions, but courts over time have given them varied and overlapping meanings.  The mens rea required for California Penal Code § 245, in particular, has been the "subject of a long, tortured, and ongoing set of explanations in the California courts."  United States

---

[1]  The Williams court stated:

a defendant is only guilty of assault if he intends to commit an act "which would be indictable [as a battery], if done, either from its own character or that of its natural and probable consequences."  Logically, a defendant cannot have such an intent unless he actually knows those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another, i.e., a battery.  In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known.  He, however, need not be subjectively aware of the risk that a battery might occur.

Williams, 29 P.3d at 202-03 (internal citations omitted).

v. Grajeda, 581 F.3d 1186, 1189-92 (9th Cir. 2009). Mr. Santos-Santos attempts to re-open the question. He characterizes Williams in a way that, to him, suggests that a defendant can be convicted for acts that directly, naturally, and probably lead to battery (though stopping short of it) without any finding of intent to cause injury. The opinion, however, read as a whole, makes clear that what the statute punishes are intentional acts that, if completed, would have resulted in battery—i.e., acts that have battery as their natural but unfulfilled consequence. As Williams explained, because "assault criminalizes conduct based on what might have happened—and not what actually happened—the mental state for assault incorporates the language of probability, i.e., direct, natural and probable consequences." 29 P.3d at 202. Mr. Santos-Santos echoes the dissent's conclusion in Williams. ("I do not agree that the majority's formulation requires a mental state more culpable than criminal negligence or recklessness," id. at 207 (Kennard, J., dissenting)).

What constitutes a "crime of violence" under Sentencing Guideline § 2L1.2 is a question of federal law. But what elements (among them a mens rea) must be proved to sustain a conviction under California Penal Code § 245(a)(1) is a question of state law; here, the California Supreme Court's determination is conclusive. See Johnson v. United States, 130 S.Ct. 1265, 1269 (2010) ("We are...bound by the Florida Supreme Court's interpretation of state law, including

its determination of the elements of Fla. Stat. §784.03(2).").  Our inquiry is limited only to considering whether California Penal Code § 245(a)(1), measured by its elements, constitutes a "crime of violence" under Sentencing Guideline § 2L1.2.  Mr. Santos-Santos cites intermediate appellate court decisions that he claims are "contrary to the language of the guideline and to the reasoning of Leocal," Aplt. Br. 15, but even if we accepted his characterization of them, they cannot overrule the holding of a superior court.  Thus, we hold that California Penal Code § 245(a)(1) is a "crime of violence" under Sentencing Guideline § 2L1.2.[2]  We agree with the conclusion of the Ninth Circuit in Grajeda, 581 F.3d at 1189-92.  Because the district court did not err in enhancing Mr. Santos-Santos's sentence based on his assault conviction in California, the judgment is

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[2] The government argues that the sentencing enhancement can also be upheld because § 245(a)(1) is a form of "aggravated assault," an enumerated "crime of violence" under Sentencing Guideline §2L1.2.  See cmt n. 1(B)(iii).  It contends that the law "'roughly corresponds' to the definition of aggravated assault in a majority of California's criminal codes" and in the Model Penal Code. Aplee. Br. 10.  We note that the Fifth Circuit so held in United States v. Sanchez-Ruedas, 452 F.3d 409, 414 (5th Cir. 2006), but we have no occasion to reach this question today.