**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARVIN ANTHONY HERRERA,

    Defendant - Appellant.

No.07-2043
(D.C. No. CR-06-1161 JCH)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **LUCERO, HOLLOWAY** and **McCONNELL**, Circuit Judges.

## I. INTRODUCTION

Marvin Anthony Herrera was charged in an indictment with one count of illegally re-entering the United States after prior deportation in violation of 8 U.S.C. §§ 1326(a)(1), 1326(a)(2), and 1326(b)(2). Pursuant to a plea agreement, Mr. Herrera pled guilty to the lone charge in the indictment. The Probation Office prepared a Pre-Sentence Report ("PSR") which alleged that in 2004, Mr. Herrera was convicted of battery in a California state court under Cal. Penal Code

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

§ 242. The PSR stated that pursuant to Section 2L1.2 of the Guidelines, unlawfully entering or remaining in the United States carries a base offense level of eight. In addition to the initial base offense level of eight, the PSR recommended a sixteen level "crime of violence" enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on the previous California battery conviction. The final base offense level calculated by the PSR was twenty-one after a three level reduction for acceptance of responsibility.

At sentencing, Mr. Herrera moved for a downward departure from the PSR's recommended criminal history category V, but did not challenge the sixteen level enhancement. The district court denied the motion, adopted the findings of the PSR, and sentenced Mr. Herrera to the low end of the guideline range – a seventy month term of imprisonment. Mr. Herrera timely appealed and argued, for the first time, that the application of the sixteen level enhancement was in error. We have appellate jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

In October of 2004, Mr. Herrera was convicted of battery on a peace officer under § 242 of the California Penal Code for which he received a two year sentence in the California penal system. He was released from prison on October 17, 2005 whereupon his parole commenced. On December 14, 2005, Mr. Herrera was deported to Honduras.

This prior California battery conviction provides the foundation for the

-2-

issue raised in the instant case. It is critical to note that the PSR was the sole source of the information concerning Mr. Herrera's previous California battery conviction. The government did not submit any documents from the California court of conviction to establish that Mr. Herrera was convicted of battery in California. Any information with respect to the California conviction was discovered by the Probation Office and then used in formulating the PSR. The government provided no court documents from the California state court of conviction in support of the sixteen level enhancement.

The events giving rise to the instant appeal occurred on February 23, 2006, when Mr. Herrera was apprehended by United States Border Patrol agents near Hachita, New Mexico. On May 23, 2006, a New Mexico grand jury returned a one count indictment against Mr. Herrera charging him with illegally re-entering the United States after a previous deportation in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2). Mr. Herrera pled guilty to the illegal re-entry charge on June 30, 2006.

The Probation Office prepared the PSR and stated that the initial base offense level for Mr. Herrera was eight, pursuant to U.S.S.G. § 2L1.2(a). The PSR also recommended that the sixteen level enhancement found in U.S.S.G. § 2L1.2(b)(1)(A)(ii) be imposed because Mr. Herrera had previously been convicted of a "crime of violence" as defined by the Guidelines. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). The PSR found Mr. Herrera to have a criminal history category V and

determined the final base offense level to be twenty-one after a three level reduction for acceptance of responsibility.

Before the sentencing hearing, Mr. Herrera filed a motion for a downward departure based on the argument that the criminal history category over-emphasized his prior criminal conduct. The motion requested lowering the criminal history category from V to IV. The motion did not contest the imposition of the sixteen level enhancement. On February 6, 2007, the district court held the sentencing hearing. The court denied the Defendant's motion for a downward departure and adopted the factual findings of the PSR. The advisory guideline range for an offense level of twenty-one and a criminal history category V was seventy to eighty-seven months' imprisonment. At the conclusion of the hearing, the district court sentenced Mr. Herrera to seventy months' imprisonment. Mr. Herrera filed a timely notice of appeal on February 13, 2007.

On appeal, Mr. Herrera presents a new argument not made below. Specifically, Mr. Herrera contends that battery under § 242 of the California Penal Code is not categorically a "crime of violence" under the Guidelines and therefore the sixteen level enhancement should not be applied in the instant case. Mr. Herrera urges this court to remand for re-sentencing with instructions to remove the sixteen level enhancement.

### III. DISCUSSION

*A. Standard of Review*

Generally, this court exercises *de novo* review over the district court's interpretation and application of the sentencing guidelines. *United States v. Tisdale*, 248 F.3d 964, 975 (10th Cir. 2001); *United States v. Contreras*, 210 F.3d 1151, 1152 (10th Cir. 2000). The standard of review changes, however, when the defendant fails to make a particular objection to the district court's application or interpretation of the guidelines. *United States v. Munguia-Sanchez*, 365 F.3d 877, 878 (10th Cir. 2004) (citing *United States v. Whitney*, 229 F.3d 1296, 1308 (10th Cir.2000). In the instant case, Mr. Herrera did not make a specific objection to the application of the U.S.S.G. § 2L1.2(b)(1)(A)(ii) enhancement thereby limiting this court to review only for plain error. *Munguia-Sanchez*, 365 F.3d at 878. As we stated in *Mungia-Sanchez*, in order

> [t]o establish plain error, [a defendant] must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights. If these three elements are satisfied, then we may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 878-879 (internal quotations and citations omitted; alterations in the original). Mr. Herrera concedes that plain error is the appropriate standard of review.

*B. U.S.S.G. and California Statutory Provisions*

The sole issue on appeal is whether the district court committed plain error when it applied the sixteen level "crime of violence" enhancement found in

U.S.S.G. § 2L1.2(b)(1)(A)(ii) to Mr. Herrera. Reviewing the language of the relevant Sentencing Guidelines' provisions is necessary in conceptualizing this issue. Section 2L1.2(b)(1)(A)(ii) of the Guidelines states that a sixteen level enhancement is warranted "[i]f the defendant previously was deported...after (A) a conviction for a felony that is...(ii) a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). Under § 2L1.2 of the Guidelines, the phrase "crime of violence" is defined as

> any of the following: murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.*

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii)(emphasis added). Since battery is not one of the twelve enumerated offenses, the relevant language for the instant appeal is the catchall provision providing that a crime of violence is any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*

Having laid out the framework of the Sentencing Guidelines provisions at issue, we now must turn to the underlying California statute of conviction, § 242 of the California Penal Code. California Penal Code § 242 defines battery as the "...willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. As stated above, battery is not one of the twelve enumerated

-6-

offenses in U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). Therefore, in order to determine if § 242 qualifies under the Guidelines as a crime of violence, we must decide whether battery under California law "...has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

Mr. Herrera contends that a California battery conviction under § 242 is not necessarily a crime of violence because it does not require that an individual use, attempt to use, or threaten to use physical force against the person of another. Mr. Herrera argues that battery under § 242 includes crimes that *do not have* as an element the use, attempted use, or threatened use of physical force against the person of another as required by the Guidelines' definition of a crime of violence. Put another way, one can commit battery in California, thereby violating § 242, without using, attempting to use, or threatening to use physical force against the person of another. Mr. Herrera maintains that this prevents battery under § 242 from being a categorical crime of violence under the Guidelines.

Certainly, § 242 does indeed cover crimes of violence as defined by the Guidelines under U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). This is clear because § 242 would include a category of crimes that have as an element the use, attempted use, or threatened use of physical force against the person of another. However, Mr. Herrera argues that § 242 also proscribes another category of crimes – crimes not involving the use, attempted use, or threatened use of physical force against

-7-

the person of another – that are not covered by U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). Mr. Herrera contends that both of these categories of conduct are covered by § 242: (1) conduct involving the use, attempted use or threatened use of force against the person of another and (2) conduct not involving the use, attempted use or threatened use of force against the person of another. Thus, Mr. Herrera argues that § 242 is too broad to be a categorical crime of violence as defined under the Guidelines because there is no way to discern which type of conduct was committed.

Ultimately, Mr. Herrera maintains that it is possible to commit battery under Cal. Penal Code § 242 and yet not commit a crime of violence under § 2L1.2 of the guidelines. Thus, Mr. Herrera contends that a reversal of the sixteen level crime of violence enhancement is required and he requests remand to the sentencing court for re-sentencing. This argument, the crux of the appeal, will be explored in depth in section D. However, prior to addressing that issue, we must address the proper approach to be used in evaluating whether or not Mr. Herrera committed a crime of violence under the Guidelines when he was convicted of battery under § 242 of the Cal. Penal Code.

*C. Pure Categorical v. Modified Categorical Approach*

This area of sentencing review is complicated and is prone to producing decisions that may, at times, lack the utmost clarity. Luckily, this court has had the opportunity to review this area recently. In evaluating whether or not an

-8-

underlying conviction constitutes a "crime of violence" this court has had the opportunity to comment on the appropriate approach – pure categorical or modified categorical – to use in determining whether the application of the enhancement was proper. *See United States v. Maldonado-Lopez*, 517 F.3d 1207 (10th Cir. 2008); *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008).

Regardless of the approach used, our precedent indicates that it is proper for this court to look to the state court's analysis of its own law in interpreting the underlying state law conviction which serves as the basis for the sixteen level "crime of violence" enhancement. *See United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005) (stating that "[s]ince the language of the statute is broad, we turn to Colorado courts for interpretive assistance"); *United States v. Reina-Rodriguez*, 468 F.3d 1147 (9th Cir. 2006); *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1143 (9thCir. 2007).

The pure categorical approach focuses on the elements of the underlying conviction alone without evaluating the underlying facts of the defendant's conduct. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005). However, there is an exception to the pure categorical approach. The exception allows for the sentencing court to consult reliable court documents from the underlying court of conviction. This is called the modified categorical approach.

In applying *Taylor*, we have stated that the modified approach applies

where the underlying statute of conviction "is ambiguous, or broad enough to encompass both violent and nonviolent crimes, [then] a court can look beyond the statute to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto and findings by the sentencing court." *Perez-Vargas*, 414 F.3d at 1284. In *United States v. Hays*, this court stated that "[w]hen the underlying statute [of conviction] reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy." *Hays*, 526 F.3d at 676 (quoting *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005). This statement resembles that made by the Supreme Court in *Taylor*, and cited above. However, *Hays* also contains a critical limiting factor that narrows the number of situations when the modified categorical approach may be used. In *Hays*, we said that "[s]uch review does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine '*which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face*.'" *Hays*, 526 F.3d at 676 (quoting *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007) (emphasis added) (internal quotation and citation omitted).

The key portion of the statements from *Hays* informs us that the modified approach is properly used when the underlying statute of conviction contains

multiple element sets and is therefore divisible. This statement, that documents may be consulted when the statute provides two distinct avenues for a violation, limits the initially broad statement by the Supreme Court in *Taylor* that a statute need only be ambiguous and reach both violent and non-violent conduct in order for the sentencing court to utilize the modified approach and properly consider judicial documents. For example, in *Hays*, we examined a Wyoming battery statute that read as follows: "[a] person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another." Wyo. Stat. Ann. § 6-2-501(b). There are two ways that a person may commit battery in Wyoming: first, the individual may unlawfully touch another in a rude, insolent or angry manner and second, the individual may intentionally, knowingly or recklessly cause bodily injury to another. *Id.* Thus, since there are two ways to commit battery in Wyoming, the court may properly consider reliable judicial documents in an attempt to discern which method was used by the defendant in committing battery.

However, in *Hays*, the only document provided in the record that referenced the Wyoming battery conviction was the PSR in the ongoing federal criminal case. No documents from the Wyoming court of conviction were provided to the sentencing court. With regard to that situation, we stated that the "presentence report in the present case...is not one of the documents that this court may examine to resolve this ambiguity." *Hays*, 526 F.3d at 678. This

-11-

discussion of *Hays* indicates that the modified categorical approach is properly used when the underlying crime of conviction may be accomplished by two or more separate element sets.

It is also helpful that this court recently decided *United States v. Maldonado-Lopez*, 517 F.3d 1207 (10th Cir. 2008), which tackled the issue of the proper approach to be implemented when deciding if the defendant's underlying conviction constituted a "crime of violence" under U.S.S.G. § 2L1.2. As in the instant case, *Maldonado-Lopez* dealt with the definition of a "crime of violence" as defined under U.S.S.G. § 2L1.2. *Maldonado-Lopez*, 517 F.3d at 1208-09. In *Maldonado-Lopez*, we considered whether or not the defendant had three prior convictions for crimes of violence which would warrant the imposition of a four level enhancement under U.S.S.G. § 2L1.2(b)(1)(E). *Id.* at 1208. The defendant in *Maldonado-Lopez* had three prior convictions for harassment in Colorado; the precise question before the court in *Maldonado-Lopez* was whether the convictions were considered crimes of violence under the Guidelines. *Id.*

Ultimately, the *Maldonado-Lopez* court decided that the statute of conviction, Colo. Rev. Stat. § 18-9-111(1)(a), provided that an individual committed harassment in Colorado without the use of physical force, thereby preventing the four level enhancement from automatically applying. 517 F.3d at 1210. We reasoned that Colorado's harassment statute was broad enough to cover violent crimes, such as striking a victim, and also non-violent crimes, such as

-12-

spitting on a victim. *Maldonado-Lopez*, 517 F.3d at 1209.

The majority opinion then stated that because the statute was broad enough to cover both violent and non-violent crimes, it was proper for the sentencing court to look to the charging documents (indictment, jury instructions, plea transcripts, judgments, and plea agreement if any exist) from the defendant's three prior convictions. *Id.* The court determined that in two of the convictions, sufficient information existed in the plea transcripts that supported the sentencing court's finding that the defendant had committed a crime of violence. *Id.* However, with respect to the third harassment conviction, the court only had the judgment from the court of conviction to consult and it failed to provide evidence that the defendant engaged in conduct that constituted a crime of violence. *Maldonado-Lopez*, 517 F.3d at 1209-10. Ultimately, we held that the enhancement was not supported and remanded for re-sentencing. *Id.* at 1210.

The concurrence by Judge McConnell focused on which approach was appropriate in that case: the pure categorical approach or the modified categorical approach. *Id.* at 1210. At the outset, the concurrence explains the pure categorical approach and when it is utilized and also explains the "exception" to the pure categorical approach – also known as the modified categorical approach:

> [w]hen a sentencing enhancement is framed in terms of the statute of conviction, the categorical approach applies and the sentencing court must look not to the particular facts of the prior conviction but to the terms of the underlying statute. *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086 (10th Cir. 2005). Even within the

scope of the categorical approach, however, the Supreme Court has recognized an "exception" for cases where the jury was actually required to find all the elements of the generic offense in order to convict, but where it is not clear from the statute itself which version of the crime the defendant was charged with. *Taylor v. United States*, 495 U.S. 575, 602 (1990); *Shepard v. United States*, 544 U.S. 13, 17 (2005). In such a case, the sentencing court may consult the indictment, jury instructions, plea colloquy transcript, and written plea agreement, if these exist.

*Maldonado-Lopez*, 517 F.3d at 1210 (internal citations omitted). Both the concurrence and the majority agreed that the Colorado statute at issue did not *necessarily* require the use, attempted use, or threatened use of physical force against the person of another. However, the concurrence concluded that what the defendant actually did was irrelevant in determining whether the underlying statute of conviction had as an element the use, attempted use, or threatened use of physical force against the person of another. Thus, the concurrence recommended utilizing the pure categorical approach and not examining the charging documents as allowed under the modified categorical approach. In contrast, the majority opinion considered it appropriate to examine further into the charging documents to determine if they would reveal what part of the Colorado harassment statute was violated and whether or not that violation qualified as a crime of violence. The concurrence stated that utilizing the modified categorical approach, where charging documents are examined, is appropriate where "the statute itself has subparts with different enumerated elements, and it is not clear which set of elements the defendant was convicted

-14-

under." *Id.* at 1211. This principle echoes the analysis in *Hays*. Looking to the charging documents when the underlying statute of conviction at issue has subparts allows the sentencing court to determine under which set of elements the defendant was convicted.

Another recent case, *United States v. Zuniga-Soto*, --- F.3d ----, 2008 WL 2252561 (10th Cir. 2008), furthers the analysis found in *Hays* and *Maldonado-Lopez*. In *Zuniga-Soto*, the defendant pleaded guilty to assaulting a public servant in violation of Tex. Pen.Code § 22.01.[1] *Zuniga-Soto*, 2008 WL 2252561, *2. As in the instant case, the same sixteen level crime of violence enhancement from the Guidelines was at issue in *Zuniga-Soto*. *Id.* at *3. The court addressed which approach – pure categorical or modified categorical – to use in analyzing whether the defendant's underlying Texas assault conviction qualified as a crime of violence under the Guidelines. *Id.* at *7-8. The *Zuniga-Soto* court noted, as mentioned above, that there appears to be an intra-circuit split where at times the opinions have allowed

> an inquiry beyond the statutory definitions of crimes. *E.g., United States v. Maldonado-Lopez*, 517 F.3d 1207, 1209 (10th Cir.2008) (noting that a sentencing court applying § 2L1.2's definition of "crime of violence" may "deviate from the categorical approach to determine whether a conviction under [a Colorado harassment statute] is a crime violence"); *United States v. Hernandez-Garduno*, 460 F.3d 1287, 1294 (10th Cir.2006) (observing that "[i]f the

___

[1] Tex. Pen.Code § 22.01 reads:
(a) A person commits an [assault] if the person:
(1) intentionally, knowingly, or recklessly causes bodily injury to another...

charging documents, plea agreement, transcript of a plea colloquy, or sentencing court findings of the prior state court conviction demonstrate that third-degree assault did, in fact, involve the use ... of physical force, then the particular defendant's prior assault conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A)(ii)").

*Zuniga-Soto*, 2008 WL 2252561, *8 (alterations in original).

Ultimately, the *Zuniga-Soto* court held that consistent with our precedent, "the express focus of § 2L1.2's definition of crime of violence was on the elements of the state crime at issue rather than the unique underlying circumstances of the crime. *Id.* at *9 (internal quotations and citations omitted). The court first looked at the Texas assault statute and found that the state could obtain a conviction against an individual by showing that a person "intentionally, knowingly, or recklessly causes bodily injury to another..." Tex. Pen.Code § 22.01(a)(1). The *Zuniga-Soto* court found that while the statute was grammatically divisible, there was no evidence that the defendant "was convicted under a part of § 22.01 that excluded recklessness from its definition of assault." *Zuniga-Soto*, 2008 WL 2252561, *10. The court then proceeded to apply the pure categorical approach to the underlying Texas assault statute. *Id.* at *9-10.

An analysis of Cal. Penal Code § 242 results in our conclusion that the pure categorical approach is appropriate in the instant case. Similar to the Texas assault statute in *Zuniga-Soto*, here, the underlying statute, Cal. Pen. Code § 242, is one that contains a disjunction *"or"* in its text, but does not contain multiple

-16-

element sets or subparts. This mirrors the potential grammatical division found at issue in *Zuniga-Soto*. Section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242. One could read this statute as having subparts or multiple element sets by construing the disjunction "or" as follows:

> (1) the willful and unlawful use, of
> > (a) force, *or*
> > (b) violence,
> (2) against the person of another.

However, one could read the statute's phrase "force or violence" as a term of art that is not meant to be treated as two completely separate and distinct terms. Since there are two reasonable interpretations of the ambiguous statute, pursuant to *Perez-Vargas*, 414 F.3d at 1286, we look to the California state courts for interpretive assistance.

In *People v. Page*, the California Court of Appeal stated that the term "force or violence" has "the *special legal meaning* of a harmful or offensive touching." *People v. Page*, 20 Cal.Rptr.3d 857, 864 n.1 (Cal. Ct. App. 2004) (emphasis added); *see also Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1059 (9th Cir. 2006); *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006). The California state courts' determination that "force or violence" has a special legal meaning that differs from the ordinary meaning of the two words makes it a term of art. Black's Law Dictionary defines a term of art as: "[a] word or phrase

having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts." Black's Law Dictionary 1511 (8th ed. 2004); *see also Hamling v. United States*, 418 U.S. 87, 118 (1974).

Since the phrase "force or violence" is a term of art, as determined by the California courts, it is not possible to separate § 242 into subparts or multiple element sets. Additionally, the California Supreme Court states that "force or violence...has the special legal meaning of a harmful or offensive touching. *People v. Pinholster*, 4 Cal.Rptr.2d 765 (Cal. 1992). In *Page*, the California Court of Appeals stated that "[i]t has long been established, both in tort and criminal law, that the least touching may constitute battery." *Page*, 20 Cal.Rptr.3d at 864 n.1 (citing *People v. Colantuono*, 26 Cal.Rptr.2d 908 (Cal. 1994)) (internal quotations omitted).

In *People v. Mansfield*, 245 Cal.Rptr. 800, 803 (Cal. Ct. App. 1988), the California Court of Appeals stated that to constitute battery, "force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." *Mansfield*, 245 Cal.Rptr at 803 (internal citations and quotations omitted); *see also People v. Martinez*, 83 Cal.Rptr. 914, 915 (1970)("Any harmful or offensive touching constitutes an unlawful use of force or violence."). Furthermore, there is no indication from the California courts that an individual could be charged with only using force to commit battery or only using violence to commit battery. The California battery

statute does not have multiple element sets, nor does it have subparts that provide for a variety of elements that may be found by a jury (or plead guilty to by a defendant) in order to convict the individual for battery. Section 242 is composed of one single statement that defines battery. In California, all that is required for battery is the intent to commit a "willful and unlawful use of force or violence upon the person of another." *People v. Lara*, 51 Cal.Rptr.2d 402, 405 (Cal. Ct. App. 1996)(citing *People v. Colantuono*, 26 Cal.Rptr.2d 908 (Cal. 1994)). Any individual who either pleads guilty to or is found guilty of battery in California satisfies the following elements – and only these elements – in every situation: (1) willful and unlawful use of, (2) force or violence, (3) against the person of another.

Based on the *Zuniga-Soto* opinion and our recently developed jurisprudence in this area, the pure categorical approach will be used in the instant case where the underlying statute of conviction, Cal. Penal Code § 242, does not proscribe battery in multiple element sets or subparts. The pure categorical approach does not allow for charging documents to be considered in discerning whether or not the defendant committed a crime of violence. As Judge McConnell stated in his *Maldonado-Lopez* concurrence, under the pure categorical approach "[t]he elements are the elements, and they can be determined only by reading and interpreting the statute itself." 517 F.3d at 1211.

In fact, this case is very much like those in *Maldonado-Lopez* and *Zuniga-*

*Soto* where the underlying statute of conviction encompasses both violent and non-violent crime. The concurrence recommended applying the formal categorical approach and we adopt that recommendation in the instant appeal for the following reasons. Were this court to apply the modified categorical approach (thereby allowing the examination of the *Taylor-Shepard* approved court documents from the underlying conviction) the particular conduct of the defendant would be examined and taken into account, which is improper. In *United States v. Lewis*, 405 F.3d 511 (7th Cir. 2005), cited by the concurrence in *Maldonado-Lopez*, the Seventh Circuit explained the function of allowing the sentencing court to examine the charging documents in the underlying conviction:

> The list in *Shepard* is designed to identify documents that illuminate what crime the defendant committed, which can be hard to pin down if one statute defines both 'violent' and 'non-violent' versions of a single offense. Using additional materials such as affidavits to ascertain how this person violated a statute departs from the categorical approach that *Shepard* and *Taylor* adopt.

*Lewis*, 405 F.3d at 515. For example, the consultation of documents pertaining to the underlying conviction would be particularly helpful were the statute one that had two distinct subparts – with which an individual may be charged – which individually provided (1) an element set for a violent version of the crime and (2) another different element set for the non-violent version of the crime. Thus, by examining the court documents, there may be an indication as to which *element set* the individual was charged with and convicted under – *not* what the defendant

actually did to the victim. *See Zuniga-Soto*, 2008 WL 2252561, * 8 (holding that a court may examine judicial records to determine which part of a statute was charged against the defendant but not to engage in a subjective inquiry into the factual circumstances of the underlying conviction).

However, in the instant case, the California battery statute does not have subparts or distinct element sets, but it does encompass both violent and non-violent versions of battery which is substantially similar to the situation in *Maldonado-Lopez* and *Zuniga-Soto*. *See Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1014 (9th Cir. 2006) (holding that the pure categorical approach is used when determining whether Cal. Penal Code § 242 constitutes a crime of violence under 18 U.S.C. § 16). Since we have concluded that the categorical approach applies in the instant case, we are not allowed to examine any judicial documents from the underlying court of conviction or from the ongoing federal case in determining whether the conviction has as an element the use, attempted use, or threatened use of force against the person of another.

*D. § 242 and the Use, Attempted Use, or Threatened Use of Physical Force*

This is the crux of the instant appeal: whether § 242 has as an element the use, threatened use, or attempted use of physical force against the person of another. Under *Perez-Vargas*, noted above, it is proper for this court to consider the state court's interpretation of the underlying statute of conviction, in this case § 242. Furthermore, we give deference to the state court's interpretation of its

-21-

own law. *See United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005); *see also United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1143 (9th Cir. 2007) (holding that under the *Taylor-Shepard* framework, state statutes are read according to the state court interpretation)*; United States v. Reina-Rodriguez*, 468 F.3d 1147, 1152 (9th Cir. 2006) (holding that when utilizing the categorical approach, the court is bound by the state court's interpretation of the statute) *overruled on other grounds* by *United States v. Grisel*, 488 F.3d 844, 851 (9th Cir.2007) (en banc).

In reviewing California Supreme Court precedent, we find that "the least touching constitutes battery." *People v. Colantuono*, 7 Cal. 4th 206, 214, n.4 (1994) (internal quotation marks omitted). This is a general statement about battery under § 242 in California. The Supreme Court's ruling in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), is relevant in analyzing this statement from *Colantuono*. In *Leocal*, the court examined whether or not a driving under the influence offense from Florida qualified as a "crime of violence" under 18 U.S.C. § 16 – which defines a crime of violence with a broader definition than that found in the Guidelines. 543 U.S. at 5; *see United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005) ("[n]otably, 'crime of violence' is defined more narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving the use of force against property or acts that merely pose a risk of harm to another person." *See United States v. Calderon-Peña*, 383 F.3d 254, 261 (5th

-22-

Cir.2004) (en banc)). As cited by *Hays*, the Court in *Leocal* contemplated the category of crimes qualifying as crimes of violence under § 16 or the Guidelines as "violent, active crimes." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. at 11). The principle in *Leocal* – that crimes of violence suggest a category of active, violent crimes – does not correlate with the statement made by the California Supreme Court in *Colantuono* – that the least touching constitutes battery in California under § 242.

A closer look at § 242 as interpreted by the California courts reveals similar concerns about the disparity between conduct covered by § 242 and more violent conduct covered by the crimes of violence definition under the Guidelines. For example, in *People v. Pinholster*, 824 P.2d 571 (Cal. 1992), the court stated that the "[a]ny harmful or offensive touching constitutes an unlawful use of force or violence" and that throwing a cup of urine in someone's face was battery. 824 P.2d at 622 (citing *People v. Martinez*, 83 Cal. Rptr. 914, 915 (Cal. Ct. App. 1970)). Also, in *County of Santa Clara v. Willis*, 179 Cal.App. 3d 1240, 1251 n.6 (Cal. Ct. App. 1986), the court stated that "[t]he least unprivileged touching may constitute a criminal battery." In *Willis*, the court went on to further define battery when it quoted from *People v. Rocha*, 3 Cal.3d 893, 899, n.12 (Cal. 1971), "[i]n other words, force against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark."

-23-

These interpretations of battery under § 242 have been reaffirmed recently in *People v. Thomas*, 53 Cal.Rptr.3d 473, 482 (Cal. Ct. App. 2007); *see Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1059 (9th Cir. 2006) (reviewing California state court interpretation of Cal. Penal Code § 242).  A recent Ninth Circuit case is particularly noteworthy.  In *Bushell-McIntyre v. City of San Jose*, 252 Fed.Appx. 810, 811 (9th Cir. 2007), the court held that an officer had probable cause to arrest the defendant for battery because the defendant touched the officer's badge.

Having clearly found that offensive non-violent touching qualifies as battery under Cal. Penal Code § 242, we must determine whether or not § 242's definition has as an element the use, attempted use or threatened use of physical force against the person of another as required by the enhancement at issue.  As stated by the Supreme Court in *Leocal*, crimes of violence suggest a category of violent, active crimes.  543 U.S. at 11.  This categorical statement conflicts with the California courts' numerous holdings that the least offensive touching may constitute battery under § 242.  Based on the cited statement from the Supreme Court in *Leocal*, 543 U.S. at 11, which we have interpreted in *Hays*, non-violent touching seems to exist outside the category of active, violent crimes.

Aiding in our analysis are two other cases from the Ninth Circuit that warrant discussion.  The first, *United States v. Robinson*, 967 F.2d 287, (9th Cir. 1992), held that § 242 was a crime of violence – because it had as an element the

-24-

use of physical force – for the purposes of determining the defendant's career offender status under U.S.S.G. § 4B1.1.

The second Ninth Circuit case is *Ortega-Mendez v. Gonzales*, 450 F.3d at 1018. The *Ortega-Mendez* court held that § 242 is not categorically a crime of violence within the meaning of 18 U.S.C. § 16 – which defines a crime of violence in broader terms than in the instant case. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005) ("[n]otably, 'crime of violence' is defined more narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving the use of force against property or acts that merely pose a risk of harm to another person. *See United States v. Calderon-Peña*, 383 F.3d 254, 261 (5th Cir.2004) (en banc)). In contrast to *Robinson*, the court in *Ortega-Mendez* examined California state court interpretation of § 242 and found the same reasoning and came to the same conclusion as we have discussed above, i.e. that § 242's "force or violence" phrase "is a term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term." *Ortega-Mendez*, 450 F.3d at 1016. The extensive analysis and review of California state court opinions provide the basis for our consideration of *Ortega-Mendez* as persuasive authority. *See Ortega-Mendez*, 450 F.3d at 1016-18; *see also Servin v. Gonzales*, 186 Fed.Appx. 780, 781 (9th Cir. 2006) (citing *Ortega-Mendez* with approval).

Based on our own independent analysis and interpretation of Cal. Penal

Code § 242, a thorough review of California state court interpretation of § 242, the Ninth Circuit's examination of § 242, and the Supreme Court's interpretation of what constitutes a crime of violence, we find that § 242 is not a categorical crime of violence as defined by U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

*E. Plain Error Review*

The Defendant-Appellant has conceded that the alleged error below was not objected to, thereby requiring plain error review. *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir.2006). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Lopez-Flores*, 444 F.3d at 1222 (internal quotation marks omitted). The Defendant-Appellant contends that the district court committed plain error by imposing the sixteen level enhancement.

First, the defendant must show that the district court committed an error. *Lopez-Flores*, 444 F.3d at 1222 (internal quotation marks omitted). Based on the foregoing rationale from the California state courts and our own analysis of those opinions, we find that it was an error to impose the sixteen level enhancement on Mr. Herrera. An examination of the California courts' interpretation of § 242 reveals the disparity in conduct covered by § 242 and more violent conduct covered by the Guidelines' crime of violence definition.

Second, the defendant must show that the error was plain. *Lopez-Flores*,

444 F.3d at 1222 (internal quotation marks omitted).  In *United States v. Olano*, 507 U.S. 725, 734 (1993), the Supreme Court defined a "plain" error as one that is obvious or clear.  The Court also indicated that the error must be plain under law at the time of the district court's decision.  *Olano*, 507 U.S. at 735.   We have stated in *United States v. Malone*, 222 F.3d 1286, 1292 (10th Cir. 2000), that an improper interpretation or application of the Guidelines is plain error.  *See also United States v. Alessandroni*, 982 F.2d 419, 420 (10th Cir. 1992) (same).  We have also recently reaffirmed this principle, albeit in dicta, in *Zuniga-Soto*.[2]

In the instant case, we determined above that § 242 does not necessarily have as an element the use, attempted use, or threatened use of physical force against the person of another.  This necessarily means that the district court wrongly interpreted § 242 as having as an element the use, attempted use, or threatened use of physical force against the person of another. We are not concluding that the district court erred in its interpretation of the Guidelines; we are holding that the district court erred in interpreting Cal. Penal Code § 242. The question then is whether this error is plain, clear or obvious.

Under *Olano*, the Supreme Court held that "[a]t a minimum, a court of appeals cannot correct an error pursuant to [Fed. R. Crim. Proc.] 52(b) unless the error is clear under current law."  *Olano*, 507 U.S. at 734.  The error in this case,

_____

[2] The *Zuniga-Soto* panel did not need to address the argument that an incorrect interpretation of the Guidelines satisfied the second prong of the plain error analysis because the opinion reversed the enhancement on alternative grounds.

that § 242 had the required element of force, is plain under our precedent in *Malone;* but the error is also plain based on the numerous and unanimous opinions of the California state courts interpreting § 242. Furthermore, we discussed above the Ninth Circuit case, *Ortega-Mendez,* that existed at the time the district court made the determination. Thus, the jurisprudence discussed heretofore was in place and controlling at the time the district court applied the sixteen level enhancement. Based on our foregoing analysis, we find that Mr. Herrera has met the second prong of the plain error test.

The third prong of the plain error review test requires that the defendant show that the plain error affected substantial rights. *Lopez-Flores*, 444 F.3d at 1222 (internal quotation marks omitted). Mr. Herrera received a sixteen level enhancement because of the plain error committed by the district court. This results in a substantial increase in his base offense level and his term of imprisonment.

It is well-settled that sentences must be reasonable, which limitation has both procedural and substantive components. *United States v. Smart*, 518 F.3d 800, 803 (10th Cir.2008). Procedural reasonableness entails a district court's proper calculation of the base offense level. *Gall*, 128 S.C. at 597. When this does not occur, the sentence is not procedurally reasonable and a remand is appropriate unless the error was harmless. *United States v. Scott*, --- F.3d ----, 2008 WL 2502524, *6 (10th Cir. 2008) (citing *United States v. Todd*, 515 F.3d

1128, 1134-35 (10th Cir.2008); *see United States v. Kristal*, 437 F.3d 1050, 1055 (10th Cir.2006) (holding that a non-harmless error applying the Guidelines warrants remand). Thus, because the sixteen level enhancement is substantial and necessarily affected the calculation of Mr. Herrera's base offense level, we find that the error affected substantial rights.

Finally, the fourth prong asks whether the plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Lopez-Flores*, 444 F.3d at 1222 (internal quotation marks omitted). In *United States v. Eddy*, 523 F.3d 1268, 1270 (10th Cir. 2008), we stated that in order to meet the requirement of the fourth prong, the defendant must show that a failure to correct the error would be egregious and result in a miscarriage of justice. At the outset, we note that the Defendant-Appellant's base offense level was substantially increased due to the sixteen level enhancement. We also note that there is a reasonable likelihood that were this court to vacate the sentence and remand, a significantly lower sentence would result. *United States v. Brown*, 316 F.3d 1151, 1161 (10th Cir. 2003). We consider it to be egregious and a miscarriage of justice for a Defendant's incarceration to be significantly lengthened based on an improper interpretation of the law and an improper imposition of a significant Guidelines' enhancement. We conclude that there was plain error in the instant case and that a remand for re-sentencing is proper.

## IV. CONCLUSION

We **REMAND** this case to the district court with instructions to vacate the present sentence of Mr. Herrera and to impose a new sentence in conformity with this opinion.

**IT IS SO ORDERED.**

Entered for the Court

William J. Holloway, Jr.
Circuit Judge