**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 21 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MANUEL MARTINEZ-CANDEJAS,
aka MANUEL MARTINEZ-
CENDEJAS,

Defendant-Appellant.

No. 02-4023

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:00-CR-601 ST)**

---

Scott Keith Wilson, Assistant Federal Public Defender, (Steven B. Killpack,
Federal Public Defender, with him on the brief), Office of the Federal Public
Defender, Salt Lake City, Utah for Defendant - Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States
Attorney, with her on the brief), Office of the United States Attorney, Salt Lake
City, Utah for Plaintiff - Appellee.

---

Before **LUCERO** , **HARTZ** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

---

The questions presented in this case are whether a prior conviction for conspiracy to transport and harbor illegal aliens qualifies as "an alien smuggling offense committed for profit" for purposes of a 16-level sentencing enhancement provided for in United States Sentencing Guideline § 2L1.2(b)(1)(A)(vii) (2002), and if so, whether the sentencing court was permitted to consider the underlying facts of the defendant's prior conviction to determine that the offense was committed for profit. We conclude that the term "alien smuggling offense" includes transporting and harboring illegal aliens and that the district court properly considered the underlying facts. We therefore AFFIRM the district court's decision.

BACKGROUND

In May, 2001, Manuel Martinez-Candejas pled guilty to one count of illegally reentering the United States in violation of 8 U.S.C. § 1326. Mr. Martinez-Candejas had previously been convicted in 1993 for conspiracy to transport and harbor illegal aliens. According to the 2001 presentence report, Mr. Martinez-Candejas and three co-conspirators had been running an "alien smuggling operation" and were caught "smuggling eight illegal aliens from Mexico to the United States." The district court determined that this prior conviction amounted to "an alien smuggling offense." Relying on the presentence report from the 1993 conviction, the court also determined that the offense had

been commited "for profit," thereby triggering a sixteen-level enhancement of Mr. Martinez-Candejas's sentence under U.S.S.G. § 2L1.2(b)(1)(A). The district court applied the enhancement and sentenced Mr. Martinez-Candejas to 46 months in prison.

DISCUSSION

I.

The Sentencing Guidelines provide for a greatly enhanced sentence for illegal reentry if the defendant was previously deported after a conviction for an aggravated felony. U.S.S.G. § 2L1.2; *see also* 8 U.S.C. § 1326(b). Before November 1, 2001, the Guidelines required a sixteen-level enhancement if the defendant had been deported following a conviction for any aggravated felony. U.S.S.G. § 2L1.2(b)(1)(A) (2000). In 2001, the Sentencing Commission amended § 2L1.2 to create a more graduated set of sentencing enhancements. The current Guideline enumerates a list of offenses that still trigger a sixteen-level enhancement, while providing that certain drug trafficking offenses bring a twelve-level increase and all other aggravated felonies require an increase of eight levels. The enumerated offenses requiring a sixteen-level increase are:

> (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit.

-3-

U.S.S.G. § 2L1.2(b)(1)(A) (2002).

Mr. Martinez-Candejas's appeal presents two issues: (1) whether conspiracy to transport and harbor illegal aliens is an "alien smuggling offense," and (2) whether the district court may look beyond the elements of the prior offense to determine whether it was "committed for profit." We review the district court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Martinez-Villalva*, 232 F.3d 1329, 1332 (10th Cir. 2000).

II.

Mr. Martinez-Candejas contends that his prior conviction for conspiracy to transport and harbor illegal aliens was not "an alien smuggling offense," and that the district court accordingly should have increased his sentence by only eight levels rather than sixteen. Mr. Martinez-Candejas's principal argument is that the term "smuggling," in both its ordinary and legal meanings, refers to the movement of contraband across an international border. Because the crimes of harboring and transporting aliens do not include, as an element, the movement of aliens across an international border, Mr. Martinez-Candejas insists that these offenses do not involve "smuggling" and thus cannot be "alien smuggling" offenses.

The Guidelines do not currently provide a definition of "an alien smuggling offense." [1] Words not specifically defined in the Guidelines must be interpreted according to their ordinary meaning. *United States v. Checora*, 175 F.3d 782, 790 (10th Cir. 1999). Mr. Martinez-Candejas is probably correct that the word "smuggling" is primarily used in the context of illegally bringing things into or out of a country. *Black's Law Dictionary* (7th ed. 1999) defines "smuggling" as "importing or exporting illegal articles," and the *Oxford English Dictionary* (2d ed. 1989) lists "to convey (goods) clandestinely into (or out of) a country" as the primary definition of "smuggle." However, the ordinary use of the word "smuggling" is not limited to border crossings. The *Oxford English Dictionary* provides an additional definition of smuggling as "to convey, etc., in a stealthy and clandestine manner." Thus, one may "smuggle" a bag of popcorn into a movie theater. This broader meaning of smuggling is also employed in the legal context. For example, courts commonly refer to the clandestine movement of drugs and other contraband into prison as "smuggling." *See, e.g.*, *Overton v. Bazzetta*, 123 S. Ct. 2162, 2168 (2003); *Adames v. Perez*, 331 F.3d 508, 514 (5th

---

[1]The Sentencing Commission has promulgated amendments to the application notes of § 2L1.2, effective November 1, 2003, which adopt a definition of "alien smuggling offense" that includes transporting and harboring illegal aliens. *See* Notice of Amendments to Sentencing Guidelines, 68 Fed. Reg. 26960, 26973-74 (May 16, 2003). The amendments also strike the "committed for profit" requirement. *Id.*

Cir. 2003). There is therefore significant support for a plain-language definition of "alien smuggling" that refers to any clandestine movement or concealment of aliens whether or not a border crossing is involved.

More importantly, the phrase "an alien smuggling offense" implies a broader application than does the phrase "alien smuggling" by itself. The use of the indefinite article "an" and the addition of "offense" at the phrase's end indicates that the phrase "an alien smuggling offense" is meant to refer not just to alien smuggling per se but to a family of offenses that are in some sense related to alien smuggling. We have held that the term "theft offense" includes "more crimes than just theft" because "if the word 'offense' does not restrict or clarify the word 'theft,' then it must broaden it." *United States v. Vasquez-Flores*, 265 F.3d 1122, 1124 (10th Cir. 2001) (quoting *United States v. Corona-Sanchez*, 234 F.3d 449, 455 (9th Cir. 2000)). Similarly, the phrase "a drug trafficking offense," appearing in the same Guidelines provision as the one at issue here, is defined in the application notes to include the "manufacture" of controlled substances. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). By the same token, the term "an alien smuggling offense" includes not only crimes within the narrowest meaning of "alien smuggling" (illegal movement of aliens across an international border), but also offenses closely related to alien smuggling in general.

The structure of the alien smuggling statute confirms that bringing in, transporting, and harboring illegal aliens are all closely-related aspects of alien smuggling.  8 U.S.C. § 1324, entitled "Bringing in and harboring certain aliens," imposes criminal penalties on anyone who:

> (i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;
> (ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;
> (iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;
> (iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or
> (v)(I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts.

8 U.S.C. § 1324(a)(1)(A).  According to Mr. Martinez-Candejas's argument, only subsection (i), the prohibition on bringing aliens into the United States, would be an alien smuggling offense, because it is the only offense that requires bringing the alien across an international border.  However, the statute does not suggest that only "bringing in" is "alien smuggling," nor does it treat transporting or

-7-

harboring as distinct, non-smuggling activity. Significantly, the word "smuggling" does not appear in the statute at all. Rather, the statute simply proscribes a broad range of interrelated alien smuggling activities, including bringing in, transporting, harboring, encouraging to enter or reside, conspiracy, and aiding and abetting.

In a separate, though related, statute, Congress has explicitly recognized that transporting, harboring, and bringing in illegal aliens are all related to alien smuggling. In 8 U.S.C. § 1101(a)(43)(N), Congress defined as an aggravated felony all offenses under § 1324(a)(1)(A) and parenthetically described all these offenses as "relating to alien smuggling." Although the 16-level enhancement no longer explicitly depends on the definition of aggravated felony in that section, it is significant that § 1101(a)(43)(N) treats bringing in, transporting, and harboring identically and characterizes all three as aggravated felonies that are related to alien smuggling. In *United States v. Salas-Mendoza*, this Court held that the crime of transporting illegal aliens was related to alien smuggling and therefore an aggravated felony under § 1101(a)(43)(N). 237 F.3d 1246, 1247-48 (10th Cir. 2001). The defendant in *Salas-Mendoza* relied on the same plain-language interpretation of smuggling that Mr. Martinez-Candejas now advances and claimed that any crime that did not involve crossing an international border could not be related to alien smuggling. *Id*. at 1247. We rejected this argument in part

on the ground that § 1324 defines the federal crime of alien smuggling to include not only bringing aliens over the border but also illegally transporting, harboring, and concealing them within the United States:

> From its genesis as a statute prohibiting only the bringing in of aliens, § 1324(a)(1) now presents a single comprehensive "definition" of the federal crime of alien smuggling – one which tracks smuggling and related activities from their earliest manifestations (inducing illegal entry and bringing in aliens) to continued operation and presence within the United States (transporting and harboring or concealing aliens).

*Id.* (quoting *United States v. Sanchez-Vargas*, 878 F.2d 1163, 1169 (9th Cir. 1989)). Thus, this Court has concluded that the statutory definition of alien smuggling includes transporting and harboring illegal aliens for purposes of § 1101(a)(43)(N). We see no reason why the definition of "alien smuggling offense" in the Guidelines should be different.

The only other court of appeals to confront this issue has held that a defendant's prior conviction for transporting illegal aliens within the United States was "an alien smuggling offense" under the relevant Guideline. *United States v. Solis-Campozano*, 312 F.3d 164, 167 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 1811 (2003). The Fifth Circuit in *Solis-Campozano* agreed that § 1324 "defines a general class of alien smuggling offenses," including transporting aliens within the United States, and the court therefore concluded that such

offenses are "alien smuggling offenses" under § 2L1.2(b)(1)(A) of the Guidelines. *Id*. at 168.

For all of these reasons, we conclude that conspiracy to transport and harbor illegal aliens constitutes "an alien smuggling offense" under U.S.S.G. § 2L1.2(b)(1)(A)(vii).

### III.

Mr. Martinez-Candejas also argues that the district court improperly considered the underlying facts of his prior conviction in determining that the offense was committed with a profit motive. [2] He points out that, in considering whether a prior offense was a violent crime, courts employ a "categorical approach," looking only to the generic elements of the offense and not to the particular facts of the crime. *See, e.g*., *Taylor v. United States*, 495 U.S. 575, 601 (1990) (categorical approach generally required for determination of whether prior conviction was a "violent felony" under 18 U.S.C. § 924(e)); *United States v. Frias-Trujillo*, 9 F.3d 875, 877 (10th Cir. 1993) (same for determination of whether prior offense was a "crime of violence" under U.S.S.G. § 2L1.2(b)).

---

[2]Mr. Martinez-Candejas challenges the district court's finding of a profit motive only on the basis that the court should not have looked beyond the elements of the prior offense. He does not challenge the evidentiary sufficiency of the district court's finding.

The Eleventh Circuit has recently held that the categorical approach applies to enhancements for alien smuggling offenses, holding that a district court could not examine the facts underlying a defendant's prior conviction for transporting illegal aliens to determine whether the prior offense was "committed for profit." *United States v. Krawczak*, 331 F.3d 1302, 1307 (11th Cir. 2003). *But see United States v. Sanchez-Garcia*, 319 F.3d 677 (5th Cir. 2003) (per curiam) (holding that district court could look beyond indictment and statute of conviction to determine whether enhancement for alien smuggling offenses committed for profit was warranted). The court in *Krawczak*, relying on *Taylor*, stated that the categorical approach is a general rule applicable to all federal sentencing enhancements and that courts may examine the facts underlying a prior conviction only in "instances where the judgment of conviction and the statute are ambiguous." *Id*. at 1306.

We must respectfully disagree with the Eleventh Circuit's analysis. The Supreme Court in *Taylor* did not impose the categorical approach as a universal requirement of all sentencing enhancements. *Taylor* was an interpretation of 18 U.S.C. § 924(e), which imposes an enhanced sentence for any crime that "has as an element" the use or threat of force. 495 U.S. at 600-01; 18 U.S.C. § 924(e)(2)(B)(i). Stressing this particular statutory language, buttressed by the legislative history, the Supreme Court concluded that a categorical approach was appropriate to determinations under that provision because there was no

-11-

indication that Congress intended "that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." 495 U.S. at 601. The Guideline at issue here does not require that the disputed fact – a profit motive – be an "element" of the offense, but simply lists "an alien smuggling offense committed for profit" as one of several crimes eligible for a 16-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A) (2002).

In addition to statutory language and legislative history, the *Taylor* Court also took into account the "practical difficulties and potential unfairness of a factual approach." 495 U.S. at 601. Mr. Martinez-Candejas argues that these pragmatic considerations apply to the same extent in this case. But the Court did not suggest that all sentence enhancements must rely on the categorical approach even when statutory language or relevant legislative history point in the other direction. Indeed, in a footnote, the Court emphasized that, despite its imposition of the categorical approach in the § 924(e) context, the Government is still generally permitted to "present evidence of the defendant's actual prior criminal conduct . . . under the Federal Sentencing Guidelines." *Id*. at 602 n.10. The question, then, is whether the differently worded Guideline in this case allows reference to the facts of the prior offense.

In *United States v. Mackovich*, we held that the *Taylor* categorical approach is inapplicable to a district court's determination of whether an offense qualifies

as a "strike" under the federal "three-strikes" law because the applicable statute provided that a prior robbery does not qualify as a "strike" if the defendant affirmatively establishes that no use or threatened use of a dangerous weapon was involved. 209 F.3d 1227, 1240 (10th Cir. 2000), *cert. denied*, 531 U.S. 905 (2000). The Court reasoned that this language "unmistakably requires courts to look to the specific facts underlying the prior offense." *Id*.

The statute defining certain alien smuggling offenses as aggravated felonies has a similar exemption. 8 U.S.C. § 1101(a)(43)(N) provides that if "the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual)," the offense does not count as an aggravated felony. Thus, under the reasoning of *Mackovich*, the categorical approach is not applicable to enhancements based on prior alien smuggling offenses which the defendant could negate by showing he smuggled only family members. Prior to the 2001 amendments, the family member exemption was available for 16-level enhancements under §2L1.2 for previous alien smuggling offenses, thus rendering the categorical approach inapplicable to such offenses. Although the current version of the 16-level enhancement in § 2L1.2(b)(1)(A)(vii) for alien smuggling offenses committed for profit does not explicitly allow the family member exemption, it seems likely that the Sentencing Commission intended to maintain

the substance of the exemption in slightly different form.    *See* Notice of Amendments to Sentencing Guidelines, 68 Fed. Reg. 26960, 26973-74 (May 16, 2003) (stating that the § 1101(a)(43)(N) exemption for family members "generally is consistent with the guideline's previous terminology of 'alien smuggling offense committed for profit.'").

Comparison of the language of U.S.S.G. § 2L1.2(b)(1)(A)(vii) with that of other sentence enhancements under the Guidelines suggests that it was not intended to preclude reference by the sentencing court to the underlying facts.  In contrast to the enhancement for a "crime of violence," which the Guidelines specifically define in terms of offenses and their elements,  § 2L1.2(b)(1)(A)(vii) does not state that the profit motive must be an element of the offense.    *Compare* U.S.S.G. § 2L1.2, cmt. n.1(B)(ii) (defining "crime of violence" as "an offense . . . that has as an element the use . . . of physical force against the person of another"),  *with* U.S.S.G. § 2L1.2, cmt. n.1(B)(i) ("'Commited for profit' means committed for payment or expectation of payment.").  When the Sentencing Commission wishes to limit consideration of the prior offense to the specified elements of the crime, it knows how to do so.  Absence of the language "as an element" suggests that the Commission did not intend to limit § 2L1.2(b)(1)(A)(vii) in that way.

Finally, application of the categorical approach in the context of alien smuggling offenses would lead to a perverse distinction between different types of alien smugglers. 8 U.S.C. § 1324(a)(1)(A) defines six different alien smuggling offenses. [3] The first, § 1324(a)(1)(A)(i), involves bringing the alien into the United States, and the fifth, § 1324(a)(1)(A)(v)(I), involves conspiracy to commit any of the other specified crimes under § 1324(a)(1)(A). Violation of these provisions entails a 10-year statutory maximum. The sixth offense, § 1324(a)(1)(A)(v)(II), involves aiding and abetting the other offenses. Violation entails a 5-year statutory maximum. The other three offenses, subsections (ii), (iii), and (iv), involve transporting an alien within the United States, concealing or harboring an alien from detection, or encouraging or inducing illegal entry of an alien, respectively. Violation of these provisions entails a 5-year statutory maximum, unless these offenses are "done for the purpose of commercial advantage or private financial gain," in which case violation entails the same 10-year maximum accorded the crime of bringing the alien into the United States or of conspiracy.

Presumably, these sentences reflect Congress's assessment of the relative seriousness of these crimes. If Mr. Martinez-Candejas's interpretation is correct, however, the § 2L1.2(b)(1)(A)(vii) sentencing enhancement will be available only

---

[3]The statute is quoted in full in Part II, *supra* at 6-7.

-15-

for the crimes for which a profit motive may be charged as an element of the offense – namely, the three less serious crimes of transporting, harboring, or encouraging. We can fathom no reason why the 16-point enhancement would be imposed for three crimes Congress deemed less serious and not for the two crimes Congress deemed most serious. We decline to adopt a rule that would produce such a seemingly absurd result.

For the foregoing reasons, the judgment of the district court is AFFIRMED.