**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 13, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LUIS RAMON MEDELLIN-ZAPATA,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 20-9653
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MORITZ** and **ROSSMAN**, Circuit Judges.
_____

An Immigration Judge (IJ) ordered Luis Ramon Medellin-Zapata (Petitioner) removed from the United States based on his conviction of an aggravated felony—conspiracy to commit noncitizen smuggling. The Board of Immigration Appeals (BIA) upheld the IJ's order. Petitioner has filed a petition for review. Exercising jurisdiction under 8 U.S.C. § 1252(a), we dismiss the petition in part for lack of jurisdiction and otherwise deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico, and his wife is a lawful permanent resident. They have three children. The eldest, Luis, was removed from the United States in 2011 and 2016. Their middle son, Edgar, holds a U-visa.[1] And their youngest, Marco, is a United States citizen. In 2018, Petitioner was a U-visa holder and applied to adjust his status to lawful permanent resident. While in detention for the noncitizen-smuggling offense at issue in this case, his application was approved.

In May 2019, Petitioner's wife told him that Luis had called and said he intended to return to the United States by crossing the border with an individual, and a second person would drive him to Santa Fe, New Mexico, where Petitioner and his family lived. Two weeks later, Luis called to say he had crossed the border near El Paso, Texas, but the person who was supposed to pick him up never arrived. Petitioner felt he could not leave his son alone and let his wife down, so he and Edgar drove to Texas to get Luis.

That evening, a Border Patrol agent learned that two individuals had gone over the border fence near El Paso. As he responded, the agent was advised that two individuals were seen running through a backyard and likely to emerge on Petunia Drive in San Elizario, Texas. The agent saw Petitioner's car on Petunia Drive, just north of the border fence, and followed it for several streets until it made a left turn.

---

[1] "The U-Visa classification covers eligible aliens who are victims of serious crime and who cooperate with law enforcement." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 362 (4th Cir. 2021).

The agent then stopped the car and found Edgar and Petitioner in the front seat, and Luis and another man (Victor) lying down in the back seat. A second Border Patrol agent arrived to assist with the traffic stop. After some questioning, Luis and Victor admitted they had just crossed the border illegally. All four were arrested.

Petitioner pleaded guilty to one count of conspiring to transport and move noncitizens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii), and (a)(1)(B)(i). He was convicted and sentenced to time served and three years of supervised release.

Based on that conviction, the Department of Homeland Security (DHS) issued Petitioner a Notice to Appear, charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) as a noncitizen convicted of an aggravated felony after admission, namely, an attempt or conspiracy to commit an offense described in 8 U.S.C. § 1101(a)(43)(N) related to noncitizen smuggling. *See id.* § 1101(a)(43)(U) (including "an attempt or conspiracy to commit an offense described in [§ 1101(a)(43)]" among list of offenses constituting an "aggravated felony"). In relevant part, § 1101(a)(43)(N) defines "aggravated felony" to include the offense Petitioner was convicted of: "an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling)."

Petitioner denied the allegations against him and contested the charge of removability based on a family exception in § 1101(a)(43)(N). The family exception provides that noncitizen smuggling is not an aggravated felony "in the case of a first offense for which the alien has affirmatively shown that the alien committed the

offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (*and no other individual*) to violate a provision of this chapter." § 1101(a)(43)(N) (emphasis added). There apparently was no question it was Petitioner's first such offense, so the issue before the IJ was whether Petitioner could affirmatively show he committed the offense for the purpose of assisting, abetting, or aiding Luis but not Victor.

According to Petitioner and Edgar, when they arrived to pick up Luis, they saw Luis run to and get in the car. Petitioner then saw Victor. Luis had not mentioned there was another person with him, and Petitioner did not know who Victor was, whether he had crossed the border with Luis, or whether Victor was lawfully in the United States. Nor did Petitioner have a chance to ask any questions about Victor because they were arrested as soon as the two men got in the car. Petitioner disclaimed any intent to help Victor or any knowledge of his immigration status.

The IJ applied a "circumstance-specific" approach, which requires "look[ing] to the facts and circumstances underlying an offender's conviction," *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009). Under that approach, the IJ found Petitioner failed to meet his burden of establishing he committed the offense for the purpose of assisting, abetting, or aiding only Luis. First, the IJ found it "implausible" that Petitioner had no knowledge that anyone would be with Luis at the pickup location, because Petitioner admitted he and his wife knew Luis would be crossing the border with another person. R. at 68. The IJ found it reasonable to interpret that admission

4

to mean another person would unlawfully cross the border with Luis and it was possible the other person would still be with Luis when Petitioner arrived to pick up Luis. And although it did not appear Luis told Petitioner the other person would be traveling to Santa Fe with him, it also did not appear Luis said he would be alone when Petitioner picked him up.

Second, the IJ found Petitioner's testimony that he did not know if Victor had crossed the border illegally with Luis "both implausible and unbelievable." *Id.* In support of that finding, the IJ explained that Petunia Drive, where Petitioner picked up the two men between 7:00 and 8:00 p.m., runs parallel to the border approximately 400 feet north of the border fence. Victor was with Luis, who had just crossed the border illegally; they were present in an area very close to the border fence "at that time of night"; and both "were apparently 'covered in dust and small pieces of debris from brush that they may have run through.'" *Id.* (quoting Criminal Complaint, R. at 204).

Third, there was evidence that competed with Petitioner's testimony—the criminal complaint and a narrative one of the Border Patrol agents had completed. The IJ found this evidence "directly contradicted" Petitioner's testimony that he had no chance to ask Victor who he was because they were pulled over as soon as Luis and Victor got in the car. *Id.* The IJ observed that neither responding agent saw Luis and Victor get in Petitioner's car, so Petitioner had already picked them up by the

time the first agent encountered the car on Petunia Drive.[2]  Further, the length of time the first agent followed the car allowed him to check the registration.  These facts, the IJ found, demonstrated that Petitioner had sufficient time to question Luis or Victor about Victor's identity and immigration status; to believe otherwise, the IJ said, "strains credulity."  R. at 69.  But even if Petitioner never asked Victor about his identity, Petitioner "at least acquiesced to an unknown individual entering and concealing himself in his backseat with [Luis], who the respondent knew had just crossed the border illegally."  *Id.*  And although Petitioner's initial purpose may have been to pick up only Luis, that purpose changed when he allowed both Luis and Victor "to enter the vehicle and conceal themselves"; at that point, Petitioner's "purpose necessarily shifted from not only assisting Luis . . . but [Victor] as well."  *Id.*

For these reasons, the IJ sustained the charge of removability against Petitioner and ordered his removal to Mexico.  The BIA summarily agreed with the IJ's decision and dismissed Petitioner's appeal.

## II.  DISCUSSION

A single BIA member issued a brief order deciding the merits of Petitioner's appeal, so the BIA's order is the final order of removal we review.  *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  But because the BIA upheld the

---

[2] In summarizing the competing evidence, the IJ did not distinguish between the two agents, but the record makes clear that the second agent did not arrive until after the first agent had pulled the car over.

6

IJ's decision without adding any of its own analysis, we consult the IJ's decision where necessary to understand the grounds for the BIA's decision. *See id.* We review legal conclusions de novo and factual findings for substantial evidence. *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). Under the substantial-evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## A.    Credibility

Petitioner first argues the BIA erred by not remanding the case to the IJ for a credibility finding.[3] But Petitioner did not ask the BIA for such a remand. Instead, Petitioner urged the BIA to decide "whether [he] and his witnesses [were] credible." R. at 21. To that end, he asserted he and his witnesses were entitled to "a rebuttable presumption of credibility on appeal" because the IJ "did not make a specific credibility finding" and "DHS did not challenge the testimony whatsoever and accepted the proffered testimony in its entirety." R. at 21-22. Because Petitioner did not raise the issue of remand with the BIA, he has not exhausted his administrative remedies, and therefore we lack jurisdiction to consider this argument. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has

---

[3] In addressing this argument, we assume, without deciding, that the IJ did not make an express credibility finding despite his use of the terms "implausible," "unbelievable," "directly contradicted," and "strains credulity" when evaluating Petitioner's testimony, *see* R. at 68-69.

exhausted all administrate remedies available to the alien as of right[.]”);

*Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (“To satisfy

§ 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before

he or she may advance it in court.”); *see also Robles-Garcia v. Barr*, 944 F.3d 1280,

1284 (10th Cir. 2019) (“[F]ailure to exhaust an issue, as § 1252(d)(1) requires in the

immigration removal context, deprives us of jurisdiction to consider that issue.”

(internal quotation marks omitted)).[4]

## B.    Substantiality of the evidence

Petitioner argues the agency erred in finding he did not meet his burden of

establishing his conviction falls within the family exception.  We reject this argument

and conclude that substantial evidence supports the agency’s finding regarding the

family exception.[5]

---

[4] Petitioner may also be arguing the BIA should have afforded him a rebuttable presumption of credibility on appeal.  If so, he has inadequately developed the point and therefore waived appellate review of it.  *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (“An issue or argument insufficiently raised in the opening brief is deemed waived.”).

[5] The parties do not dispute the IJ’s application of a circumstance-specific approach to this issue rather than the categorical approach.  *See Nijhawan*, 557 U.S. at 37-38 (referring to the family exception in § 1101(c)(43)(N) as an example of an exception similar to those requiring use of circumstance-specific approach); *cf. United States v. Martinez-Candejas*, 347 F.3d 853, 859 (10th Cir. 2003) (holding, in context of sentencing enhancements under United States Sentencing Guidelines, that “the categorical approach is not applicable to enhancements based on prior alien smuggling offenses which the defendant could negate by showing he smuggled only family members”; instead, a court may refer “to the underlying facts” of the prior offense).

Petitioner argues he credibly testified that he intended to assist Luis and not any other individual. The IJ acknowledged that was possibly true up until the point when Victor got in the car and both he and Luis tried to conceal themselves by lying down on the back seat. But as noted, the IJ said at that point Petitioner's purpose necessarily changed because it was implausible Petitioner did not know Victor had crossed illegally, and although Petitioner had ample time to confirm that fact, he allowed Victor to remain in the car. Contesting those findings, Petitioner argues his testimony establishes he did not know Victor had just crossed the border illegally and did not have enough time to question Victor. He also asserts his story as a whole is plausible.

These arguments are no more than a request for us to reweigh the evidence by affording more weight to Petitioner's testimony and that of his wife and Edgar than to the other record evidence. But unless the record evidence compels the conclusion that Petitioner did not intend to assist, abet, or aid Victor, we may not overturn the IJ's weighing of the evidence. *See Vladimirov v. Lynch*, 805 F.3d 955, 960 (10th Cir. 2015) (explaining that when evaluating whether substantial evidence supports an agency's judgment, "[w]e neither reweigh the evidence nor assess witness credibility"). The evidence here does not compel a conclusion contrary to the IJ's findings on these points.

To the extent Petitioner suggests his testimony regarding his purpose or intent trumps the IJ's evaluation of the totality of the facts and circumstances, we reject it. "On questions of an individual's state of mind, courts often turn to circumstantial

evidence and surrounding circumstances." *United States v. Lantis*, 17 F.4th 35, 39 (10th Cir. 2021) (internal quotation marks omitted); *accord Nijhawan*, 557 U.S. at 34 (explaining that the circumstance-specific approach requires "look[ing] to the facts and circumstances underlying an offender's conviction"). The IJ did nothing more here. We also reject Petitioner's argument that the IJ's finding that Petitioner's purpose shifted once Victor got in the car is contrary to the plain language of the family exception. We agree with the government that nothing in § 1101(a)(43)(N) restricts a noncitizen's purpose to any particular point in time when committing the offense.

### III. CONCLUSION

We dismiss the petition for review in part for lack of jurisdiction and otherwise deny the petition for review.

Entered for the Court

Timothy M. Tymkovich
Chief Judge