**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2219
_____

UNITED STATES OF AMERICA

v.

TREJILIO GARCIA-VASQUEZ, a/k/a Trejelio Garcia,
                                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-18-cr-00508-001)
District Judge: Honorable Katharine S. Hayden
_____

Argued: April 25, 2023

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*

(Filed: June 5, 2023)
_____

Louise Arkel
Evan J. Austin                    [**ARGUED**]
Saverio A. Viggiano
FEDERAL PUBLIC DEFENDER'S OFFICE
1002 Broad Street

Newark, NJ 07102
    *Counsel for Appellant*

Mark E Coyne
John F. Romano                    [**ARGUED**]
U.S. ATTORNEY'S OFFICE
970 Broad Street, Room 700
Newark, NJ 07102
    *Counsel for Appellee*

———————————

OPINION OF THE COURT

———————————

BIBAS, *Circuit Judge*.

Courts must read broad phrases broadly. Trejilio Garcia-Vasquez was convicted of a drug-trafficking conspiracy and deported. Then he reentered the country illegally. After he pleaded guilty to illegal reentry, the judge enhanced his sentence based on his conspiracy conviction. He disputes that enhancement, claiming that his drug-trafficking-conspiracy conviction does not count as a "drug trafficking offense" because it did not require selling drugs. But the phrase is broad enough to reach drug-trafficking conspiracies even without an overt act. So we will affirm his sentence.

## I. GARCIA-VASQUEZ'S COCAINE CONSPIRACY, DEPORTATION, AND REENTRY

Garcia-Vasquez is a native and citizen of the Dominican Republic. He first came to the United States illegally in the 1990s. Once here, he joined a drug-trafficking ring. He was

2

arrested and, in 1999, convicted of conspiring to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846. After serving his seventy-month federal prison sentence, he was removed to the Dominican Republic in 2003.

Garcia-Vasquez later returned to the United States illegally. And he returned to dealing drugs. He was arrested and convicted in New Jersey state court of distributing heroin and other drug offenses and, in 2019, sentenced to ten years' imprisonment. The next year, New Jersey released him to federal immigration authorities.

After that, Garcia-Vasquez pleaded guilty to reentering the country illegally after having been convicted of an aggravated felony and removed, in violation of 8 U.S.C. §1326(a), (b)(2). At his first sentencing, the judge used the wrong edition of the Sentencing Guidelines Manual. So this Court vacated and remanded for resentencing.

At resentencing, the parties disputed how much to enhance Garcia-Vasquez's illegal-reentry sentence based on his 1999 cocaine-conspiracy conviction. The government advocated a sixteen-level enhancement under Sentencing Guideline §2L1.2(b)(1)(A)(i) (2015). Indeed, the Guideline's Application Note 5 extends that enhancement to inchoate crimes like conspiracy. §2L1.2 cmt. n.5. But Garcia-Vasquez objected that application notes may not extend the reach of the Guideline's text. He added that, under the categorical approach, his federal conspiracy conviction did not count as a generic conspiracy because its elements did not require an overt act.

The District Court agreed with the government and applied the sixteen-level enhancement. It sentenced him to forty-six

3

months' imprisonment, the bottom of the enhanced range, followed by one year's supervised release.

Garcia-Vasquez now appeals. The parties do not dispute any facts but disagree about how to read the Guideline. We review that pure issue of law de novo. *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc).

One procedural note: Even though Garcia-Vasquez has just finished his prison term and may soon be removed, this case is not moot. If we granted relief, the District Court on remand could credit any excess imprisonment against his remaining supervised-release term. That possibility is enough to keep this case alive. *United States v. Prophet*, 989 F.3d 231, 235 (3d Cir. 2021). So we proceed to the merits.

## II. "DRUG TRAFFICKING OFFENSE" INCLUDES CONSPIRACIES

Garcia-Vasquez argues that his 1999 conviction was only for conspiring to traffic drugs, not actually trafficking them. He relies on our recent en banc decision in *Nasir*, which held that an application note may not expand a guideline's text to reach inchoate crimes. 17 F.4th at 468–72. Here, he observes, only Application Note 5 names inchoate crimes expressly. But the plain meaning of "drug trafficking offense" already includes drug-trafficking conspiracies. So we need not resort to the application notes.

### A. "Offense" reaches the broad family of drug-trafficking crimes, including conspiracies

We start with the text. The illegal-reentry Guideline differs materially from the one in *Nasir*. It requires that Garcia-

4

Vasquez's prior conviction be "a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015). Its text does not define "drug trafficking offense"; only the application notes do. By contrast, the text of *Nasir*'s career-offender guideline *did* define "controlled substance offense" and omitted inchoate crimes. U.S.S.G. § 4B1.2(b). *Nasir* refused to let the commentary expand the textual definition to reach inchoate crimes too. But here, there is no textual definition. So we must give the phrase "a drug trafficking offense" its ordinary meaning.

Garcia-Vasquez says he was never convicted of drug *trafficking*. Trafficking, he insists, requires buying, selling, dealing, and the like. But conspiring requires only an agreement, not trading or even negotiating. *See United States v. Shabani*, 513 U.S. 10, 17 (1994). We accept that reading for the sake of argument. But the Guideline's ordinary meaning goes beyond actual trafficking to include *any* drug-trafficking offense. It captures conspiracies.

1. "*A[n] … offense*" *defines a family of related crimes*. The word "offense" is not surplusage. American law commonly uses "offense" to refer to a group of crimes. *Black's Law Dictionary* lists dozens of compound nouns in which a term modifies "offense." Each compound refers to a category, often a broad family, rather than a specific crime. Examples include "offense against property," "offense against the person," and "sexual offense." *Offense* (def. 1), *Black's Law Dictionary* (7th ed. 1999) (two years before the phrase was added to the Guideline). And though a specific crime requires specific elements, these groupings share only family resemblances. In other

words, they need not all have the same necessary or sufficient conditions, but only recognizable similarities.

Plus, the Guideline refers to "a" drug-trafficking offense, meaning one out of many. In combination, "[t]he use of the indefinite article 'a[ ]' and the addition of 'offense' at the phrase's end indicates that the phrase … is meant to refer not just to [the offense] per se but to a family of offenses that are in some sense related to" it. *United States v. Martinez-Candejas*, 347 F.3d 853, 856 (10th Cir. 2003) (McConnell, J.) (addressing "an alien smuggling offense" under the same Guideline); *see also Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1008 (7th Cir. 2001) (same, for "theft offense").

2. *The family of "drug trafficking offense[s]" includes conspiracies*. Of course, a conspiracy is an "offense." *See, e.g.*, *Conspiracy*, *Black's Law Dictionary* (7th ed. 1999). The question is what *kind* of offense. Inchoate offenses are their own family. *See Offense* (def. 1), *id.* Yet conspiracies are also "defined by the scope of [their] commitment[s]." *United States v. Smith*, 82 F.3d 1261, 1272 (3d Cir. 1996). Put more colorfully, conspiracy is "chameleon-like, tak[ing] on a special coloration from each of the many independent offenses on which it may be overlaid." *Krulewitch v. United States*, 336 U.S. 440, 447 (1949) (Jackson, J., concurring).

Under §846, the conspiracy takes its hue from drug trafficking. We have called §846 convictions "drug-trafficking conspiracies" in which "the 'offense' conspired is a violation of §841(a)." *United States v. Williams*, 974 F.3d 320, 363 (3d Cir. 2020). We have further explained that a "conspiracy under §846 becomes a drug-trafficking conspiracy when [its]

6

common goal is a violation or violations of § 841(a)." *Id.* at 371. It requires the same intent and aims at the same goal: trafficking drugs. *Id.* at 362–63. And the conspiracy and its object are even "subject to the same penalties." § 846. (That fact refutes Garcia-Vasquez's suggestion that conspiracies are not serious enough to merit the same enhancements as completed crimes.) So his conspiracy offense for agreeing to traffic drugs is, naturally, a drug-trafficking offense.

Courts commonly use "offense" to include a conspiracy to commit that offense. That is how the Supreme Court used a nearly identical phrase in *Smith v. United States*, 508 U.S. 223 (1993). The Court described Smith's indictment as including "two drug trafficking crimes—conspiracy to possess cocaine with intent to distribute and attempt to possess cocaine with intent to distribute." *Id.* at 226. It then used the terms "drug trafficking crime" and "drug trafficking offense" interchangeably. *See, e.g.*, *id.* at 227. As it happens, Smith's cocaine-conspiracy conviction under § 846 is the very same conviction on Garcia-Vasquez's rap sheet.

We and our sister circuits have likewise mentioned that conspiracies are included in the other categories of "offenses" listed in the Guideline. *See, e.g.*, *United States v. Salamone*, 902 F.2d 237, 238 (3d Cir. 1990) (including among "various firearms offenses" "conspiracy to violate the federal firearms laws by falsifying firearms transaction records"); *United States v. Williams*, 449 F.3d 635, 639 (5th Cir. 2006) (Higginbotham, J.) (including among "various alien smuggling offenses" "conspiracy to conceal, harbor, shield from detection, and transport illegal aliens"). And when we have excluded inchoate crimes, it is when the definition in a Guideline's text has done so. *See*

*United States v. Abreu*, 32 F.4th 271, 276–77 (3d Cir. 2022) (excluding conspiracies from "crime[s] of violence"); *Nasir*, 17 F.4th at 468–72 (excluding attempts from "controlled substance offense[s]").

3. *Garcia-Vasquez's responses fail*. Taken to its logical conclusion, Garcia-Vasquez's argument would lead to a "bizarre result." *United States v. Dawson*, 32 F.4th 254, 265 (3d Cir. 2022). It would limit drug-trafficking offenses to those that require "trading in or dealing" drugs. Appellant's Br. 25. That reading would exclude manufacturing drugs or possessing them with intent to distribute them. Yet "*the* paradigmatic" federal drug-trafficking offense includes both manufacturing and possession with intent to distribute. *Dawson*, 32 F.4th at 265 (citing 21 U.S.C. §841(a)(1)). Neither activity requires trading or dealing, so convictions under §841(a)(1) would not count. Excluding *the* federal drug-trafficking offense from the Guideline's drug-trafficking-offense enhancement would be strange if not "absurd." *Dawson*, 32 F.4th at 265.

Garcia-Vasquez has two fallback arguments. First, he tries to use the definition of "drug trafficking offense" from Application Note 1(B)(iv) (which includes only completed crimes) while rejecting Application Note 5's expansion of that definition to inchoate crimes. U.S.S.G. §2L1.2 cmt. nn.1(B)(iv), 5 (2015). But he cannot have it both ways. Neither Note can change the meaning of "drug trafficking offense."

Second, he says that even if conspiracies are included in "drug trafficking offense," federal conspiracies do not count as "conspiracies" because they do not require an overt act. But this response answers the wrong question. This case turns on

8

the meaning of "drug trafficking offense," not "conspiracy." Even if the federal conspiracy offense is atypical, it is undoubtedly an "offense." Though an overt act might bring a defendant closer to actual drug trafficking, it does not affect whether a drug-trafficking conspiracy is part of the drug-trafficking-offense family.

### B. The Guideline's structure is not to the contrary

Garcia-Vasquez next contrasts this Guideline with others. Because nineteen Guidelines expressly include conspiracies, he infers that the Commission deliberately omitted conspiracies from this Guideline. But his inference is weak: Those Guidelines refer to conspiracies just in their titles, which are relevant only as far as they clarify ambiguity in their Guidelines' text. *See Carter v. United States*, 530 U.S. 255, 267 (2000). And they are offense Guidelines, merely referring to the specific provision for calculating conspiracy base-offense levels. *See* U.S.S.G. § 2X1.1. Plus, there is a competing inference: other Guidelines leave conspiracies out. *See, e.g.*, *Nasir*, 17 F.4th at 471–72. This Guideline is silent. So we will not draw either inference.

### C. The Guideline's amendment history confirms our reading

Garcia-Vasquez next points to the Guideline's amendment history, but it cuts against him. Before the 2001 amendments to the Sentencing Guidelines, § 2L1.2 applied a sixteen-level enhancement for any prior "aggravated felony." U.S.S.G. § 2L1.2(b)(1)(A) (1997).

9

After the 2001 amendments, the Guidelines directed the sentencing judge to "[a]pply the [g]reatest" of a series of enhancements. §2L1.2(b)(1) (2001). The enhancement for "an aggravated felony" was reduced to eight levels. §2L1.2(b)(1)(C) (2001). The sixteen-level enhancement was now reserved for a specific list of offenses: drug-trafficking offenses, crimes of violence, firearms offenses, child-pornography offenses, national-security or terrorism offenses, human-trafficking offenses, and alien-smuggling offenses. §2L1.2(b)(1)(A) (2001).

This history is revealing. *Cf. Bittner v. United States*, 143 S. Ct. 713, 722 (2023) (analyzing a statute's amendment history). The specific list of crimes is simply a subset of the longer list of aggravated felonies. This sentencing enhancement is in the "Immigration" part of the Guidelines. U.S.S.G. pt. L(1). The Sentencing Commission wrote its terms to effectuate immigration law. And the term "aggravated felony" is a "term of art" extensively defined in the "Immigration and Nationality" chapter of the U.S. Code. *Biskupski v. Att'y Gen.*, 503 F.3d 274, 280 (3d Cir. 2007); 8 U.S.C. ch. 12. So it follows that we look to that Chapter's definition of "aggravated felony."

There, we find subsections closely associated with each item in the Guideline's list. *See* 8 U.S.C. § 1101(a)(43)(B) ("drug trafficking crime (as defined in section 924(c) of Title 18)"), (F) ("crime of violence (as defined in section 16 of Title 18)"), (E)(ii)–(iii) ("firearms offenses"), (I) ("offense … relating to child pornography"), (L) (disclosing classified information, sabotage, treason), (K) (prostitution, peonage, slavery), (N) ("offense … relating to alien smuggling").

10

The Guidelines work hand in glove with the substantive criminal law. The neat overlap here is thus strong evidence that "drug trafficking offense" in the Guideline should be read in light of "drug trafficking crime" as defined by statute under "aggravated felony." (We should not read much into the difference between "crime" and "offense"; the choice of the latter might simply have been to match the other items in the Guideline's list.) That statutory definition refers us to 18 U.S.C. §924(c). And §924(c)(2) includes conspiracies. Thus, read in all relevant context, "drug trafficking offense" includes conspiracies.

### D. Because no ambiguity remains, we need not resort to lenity or deference

Finally, Garcia-Vasquez argues that, at a minimum, we must apply the rule of lenity and read the Guideline in his favor. The government, on the other hand, asks us to defer to the Sentencing Commission's application notes under *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019). But we need not resort to either approach. The Guideline's text, structure, and amendment history leave no ambiguity to resolve. Drug-trafficking offenses include conspiracies, not just completed crimes.

\* \* \* \* \*

The illegal-reentry Sentencing Guideline applied its sixteen-level enhancement to anyone with a prior conviction for a "drug trafficking offense." U.S.S.G. §2L1.2(b)(1)(A)(i) (2015). That enhancement's text captured a wide swath of "offense[s]," both completed and inchoate, and even conspiracies without overt acts. So we need not consider the Guideline's commentary or the rule of lenity and will affirm.

11